(April 4, 1907.)

## PHIL HARRIS, Respondent, v. FARIS-KESL CONSTRUCTION COMPANY, Appellant.

[89 Pac. 760.]

CONSTRUCTION OF CONTRACT—SURROUNDING FACTS AND CIRCUMSTANCES—MEASURE OF DAMAGES—PROSPECTIVE PROFITS.

1. Where H. and the F.-K. Con. Co. entered into a contract, whereby H. was to furnish all the hardware and put in place more than two millions of feet of lumber in the construction of flumes, trestles, etc., and the company was to furnish all the lumber at the times and places where demanded by H., and it fails to do so, and suit is brought to recover prospective profits, the court in construing such contract should admit in evidence the facts and circumstances surrounding the making of the contract and the reasons for the failure of the company to furnish the lumber in accordance with its terms.

2. If the failure to perform on the part of the company was because of its intention to force or compel H. to terminate the contract, the measure of damages would include the prospective profits had the contract been completed; but if the company was endeavoring, in good faith, to comply with its part of the contract, but was prevented in doing so from no fault of its own, H. could not terminate the contract and recover prospective profits, but he might terminate it, and his measure of damages would be the value of his work already performed, and whatever damages he had sustained by reason of the delays occasioned by the company, and the loss occasioned, if any, on account of having procured the necessary outfit and appliances for carrying out the contract, should be divided between the parties in the proportion that the work already done bears to that yet to be done.

3. In cases where prospective profits may be recovered, the rule for arriving at the prospective profits is to ascertain the difference between the cost of doing the work and what the claimant was to receive for it, making therefrom a reasonable deduction for the less time engaged and for the release from the care, trouble, risk, and responsibility attending a full execution of the contract.

(Syllabus by the court.)

APPEAL from the District Court of Third Judicial District for Ada County.   Hon. Geo. H. Stewart, Judge.

Action to recover prospective profits for the violation of a contract for the construction of a flume, trestles, etc. Judgment for the plaintiff. *Reversed.*

S. H. Hays, for Appellant.

In order to properly construe the contract between the parties, the court should have admitted evidence showing the surrounding conditions and circumstances at the time of making the contract. (Page on Contracts, sec. 1123; *Merriam v. United States,* 107 U. S. 437, 27 L. ed. 531, 2 Sup. Ct. Rep. 536; *True v. Rocky Ford C. R. & L. Co.* (Colo.), 85 Pac. 842; *Westheimer v. Thompson,* 3 Idaho, 560, 32 Pac. 205; *Juliaetta Tramway Co. v. Vollmer,* 4 Idaho, 408, 39 Pac. 1115.)

The provision of the contract that the lumber would be delivered at the time desired by plaintiff must be construed in the light of the other circumstances. Defendants were entitled to a reasonable time in which to deliver the lumber after the cutting lists were received, and there was no breach until the expiration of such time. The ruling of the court rejecting the evidence offered was reversible error. An erroneous rule of damages was applied by the court.

Where an action is brought by the contractor before the completion of the work to authorize a recovery for prospective profits, a willingness on his part to complete the work and a refusal by defendant to be further bound by the contract or an abandonment of it by him must appear. (*Wharton & Co. v. Winch,* 140 N. Y. 287, 35 N. E. 589; *Lake Shore etc. Ry. Co. v. Richards,* 40 Ill. App. 560; *Fitzgerald v. Hayward,* 50 Mo. 516.)

The principal covenant in this contract was that defendant was to deliver lumber to plaintiff at various points along a distance of sixteen miles. The subordinate or incidental covenant was that the lumber was to be delivered "at the time and place desired" by plaintiff. A failure to deliver promptly or at the exact place desired would not be such a breach as would authorize plaintiff to terminate the contract.

His remedy is to complete the work and sue for damages for delay, or for damages caused by failure to deliver at the place desired. (*Kaufman v. Raeder*, 108 Fed. 171, 47 C. C. A. 278, 54 L. R. A. 247; *Monmouth Park Assn. v. Warren*, 55 N. J. L. 598, 27 Atl. 932; Page on Contracts, sec. 1450.)

The fact that they disagreed as to who should stand the expense of moving does not change the rule. (*Warren v. Stoddart*, 105 U. S. 224, 26 L. ed. 1117.)

Time is not regarded as of the essence of the contract where it concerns a provision, a breach of which does not constitute a total failure of consideration. (Page on Contracts, secs. 1159-1164; *Lynch v. Bechtel*, 19 Mont. 548, 48 Pac. 1112.)

The damages were improperly computed even under the rule fixed by the court. No allowance was made for the hazard of the business as should be done. (*United States v. Speed*, 8 Wall. 77, 19 L. ed. 449; *Waco Tap R. R. Co. v. Sherley*, 45 Tex. 355; *Shoemaker v. Acker*, 116 Cal. 239, 48 Pac. 62 (247); *Insley v. Shepard*, 31 Fed. 869.)

S. L. Tipton, for Respondent.

The party who engages to do work has a right to proceed freely without any let or hindrance of the other party, and if such other party interferes, hinders and prevents the doing of the work to such an extent as to render his performance difficult and largely diminishes the profits, he may treat the contract as broken, and is not bound to proceed under the added burdens and incurred expense. (*Anvil Min. Co. v. Humble*, 153 U. S. 540, 38 L. ed. 814, 14 Sup. Ct. Rep. 876.)

A failure to furnish the lumber as called for under the contract of plaintiff at the time and place desired and when needed went to the very substance of the contract of plaintiff. Without the lumber of the kinds needed he could do nothing, as much so as if the defendant had absolutely repudiated the contract. It was a condition precedent to its further prosecution. (*Palm v. Ohio & M. R. Co.*, 18 Ill. 217; *Lake Shore M. S. R. Co. v. Richards*, 40 Ill. App. 560; *Good-*

*rich v. Hubbard*, 51 Mich. 62, 16 N. W. 232; *Dibol v. Minott*, 9 Iowa, 403.)

"Where there is a substantial conflict in the evidence, a finding of fact based thereon will not be disturbed." (*Spaulding v. Coeur d'Alene R. & Irr. Co.*, 5 Idaho, 528, 51 Pac. 408.)

The contract was not attacked in this case on the ground of fraud, and it is not claimed that through mistake or inadvertence of the parties any material portion thereof was left out in reducing the contract to writing, and it appears on its face to be full and complete; hence we must regard the said contract as containing the entire agreement between the parties. (*Tyson v. Neill*, 8 Idaho, 607, 70 Pac. 790; *Jacobs v. Shenon*, 3 Idaho, 274, 29 Pac. 44.).

In the absence of fraud or mutual mistake, no representation, promise or agreement made, or opinion expressed in the previous parol negotiations as to the time or legal effect of the resulting written contract can be permitted to prevail, either in law or in equity, over its plain provisions and proper interpretation. (*Connecticut Fire Ins. Co. v. Buchannan*, 141 Fed. 877, 4 L. R. A., N. S., 758.)

"This evidence, if admitted, would change the contract from a certain contract to a contingent contract." (*Covington v. Kenewah Coal & Coke Co.* (Ky.), 89 S. W. 1126, 3 L. R. A., N. S., 248.)

For a breach of this contract the plaintiff can recover lost profits as damages. (*United States v. Behan*, 110 U. S. 344, 28 L. ed. 168, 4 Sup. Ct. Rep. 81; *Hale v. Trout*, 35 Cal. 229; *Tahoe Ice Co. v. Union Ice Co.*, 109 Cal. 242, 41 Pac. 1020; *Wells v. Nat. Life Assn. of Hartford*, 99 Fed. 222, 39 C. C. A. 476, 53 L. R. A. 33.)

When loss of profits arising from a breach of contract can be proved with a reasonable certainty, and such loss is directly traceable to the breach of the contract, that loss may be recovered in an action for the breach. (*Anvil Min. Co. v. Humble, supra; Watson v. Gray's Harbor Brick Co.*, 3 Wash. 283, 28 Pac. 527.)

SULLIVAN, J.—This is an action brought to recover damages for alleged lost profits for breach of a contract in the sum of $4,504 and for balance due on account of $33.75, and for material furnished of the value of $252. The cause was tried by the court without a jury, and the court found the plaintiff was entitled to recover $3,897.06 as lost profits for the breach of the contract, and found against the plaintiff on the balance of account claimed, and in his favor for the value of the material furnished. No question is raised on this appeal in regard to second and third causes of action. The questions raised by the appeal are based on the judgment rendered for prospective profits. The contract upon which this suit is based was entered into by the plaintiff and defendant on the twenty-fifth day of July, 1905, for the construction of all flumes, trestles, etc., on the Canyon County Canal thereafter to be constructed in Canyon county. The parts of the contract material to a decision of this case are as follows:

"THIS AGREEMENT, Made and entered into in duplicate. this 25th day of July, A. D., 1905, by and between Phil Harris, of Emmett, Canyon County, State of Idaho, the party of the first part, and Faris-Kesl Construction Company, Limited, a corporation, of Boise, County of Ada, State of Idaho, the party of the second part, WITNESSETH:

"That the said party of the first part, for and in consideration of the covenants, promises and agreements hereinafter contained, on the part and behalf of the said party of the second part, does hereby covenant, promise and agree to and with said party of the second part, that commencing with the 25th day of July, 1905, that he will, at his own cost, charge and expense, furnish all nails, bolts and washers of every nature and kind required and will do and perform all labor and work whatsoever required and necessary in the building and construction of all flumes, trestles, bridges, culverts, drain boxes, driving of piling, cutting of piling and preparing piling for trestles and bridges (except excavations, which shall be made by second party) on the Canyon Canal, in Boise and Canyon Counties, State of Idaho, in strict conformity with the plans and specifications furnished by the

Chief Engineer of the Canyon Canal Company, and to the satisfaction and acceptance of the said Engineer, and have the same completed and ready for use on or before the first day of April, A. D., 1906.

"The party of the second part, for and in consideration of the covenants, promises and agreements hereinbefore contained on the part and behalf of the said party of the first part, hereby agrees to and with said first party, that it will at the time and place desired by said first party, and when needed by said first party, furnish all lumber requisite and necessary for the construction of said flumes, trestles, bridges, culvert and drain boxes, and will deliver the same to said first party within 200 feet of each piece of work. The same to be delivered, at option of said first party (if so ordered at the time of delivery) one-half at each end of each piece of work (provided, that if the said second party should run any of such lumber down the Payette River instead of delivering by wagon, then in that case said lumber is to be delivered by said second party within 1,000 feet of the line of the ditch, and where the same is to be used, and from such point said second party is to pay fifty cents per thousand feet on the cost of delivering such lumber from said point to where the same is to be used, and remainder to be paid by said first party; *Provided, further,* that if said second party should deliver any such lumber within said 200 feet as hereinbefore stated, then in that case the expense thereof is to be wholly borne by said first party) and to make all excavations necessary for the laying of said flumes and trestles, and also to do all filling in around any flume, trestle, culvert or bridge that may be necessary and will pay to the said party of the first part the sum of five dollars and fifty cents for each and every one thousand feet of lumber (board measure) used under this contract. . . . .

"The party of the second part hereby agrees to pay said first party the sums of $5.50 per thousand for lumber used and fifty cents per foot for piling used, at the time and in the manner following, to wit: Ninety (90 per cent) per centum of said contract prices, on the 20th day of each and

every month, the same to be determined and estimated by the said Engineer of the Canyon Canal Company, and the remainder of said contract prices upon the completion of all of the terms and conditions of this contract by said first party.''

It appears from the record that the appellant had contracted with the Canyon Canal Company for the construction of the Canyon canal, an extensive work, thirty-four miles long, having a large amount of flume and trestle work along the first sixteen miles of its course. The flume and trestle work the respondent had contracted with the appellant to build under said written contract. The contract was entered into July 25, 1905, and about August 1st, following, the respondent commenced work, and he stopped work about February, 1906.

The contract required the respondent to furnish all hardware and to do the work necessary in the building and construction of all flumes, trestles, etc., required to be constructed on said canal and required the appellant to furnish and deliver the lumber therefor. It appears from the record that after the respondent had placed in such flumes and trestles about two hundred and forty-eight thousand feet of lumber, that, at the point at which he was then at work, there was not sufficient lumber to complete the work there, but there was lumber at other points on the canal, and it was suggested that respondent move his camp to the point where there was lumber, and a dispute arose between the manager of the appellant and the respondent as to who should pay the cost of moving the camp, and the respondent finally claimed under the terms of his contract that appellant was to furnish him the lumber ''at the time and place desired by'' him, and thereupon demanded that the lumber be furnished him at the point where he was then at work, known as the Plowman flume, and was informed by the appellant that they could not furnish him the lumber at that point, but that they had a great many thousand feet of lumber at other points along the line of the canal ready to be put in. The respondent

thereupon quit the contract and brought suit to recover prospective or future profits.

That provision of the contract on which the respondent particularly relies is as follows: "The said party of the second part hereby agrees to and with the said first party that it will at the time and place desired by said first party, and when needed by said first party, furnish all lumber requisite and necessary for the construction of said flumes, trestles," etc.; and the allegation of the plaintiff in regard to the violation of that provision of the contract is as follows: "That the defendant failed to comply with said agreement in the following particular: The defendant did not furnish, and failed to deliver, to plaintiff the lumber, board measure, necessary, requisite and of sufficient amount and quantity so as to enable the plaintiff to construct or complete all flumes, trestles, bridges, culverts and drain boxes as was required to be constructed and completed under the terms of the said agreement."

The trial was had before the court without a jury, and the court found that the appellant had failed to make delivery of the lumber as required by said contract, and that the amount of lumber required to complete said work was 1,968,216 feet; that the cost to the plaintiff to put the lumber in the structure was $3.52 per thousand; that the contract price was $5.50 per thousand, and that the profit at $1.98 per thousand would amount to $3,897.06. The court held that as the defendant had failed to furnish the lumber at the time and place demanded by the respondent, the respondent was justified or had a right to quit the work and recover the entire prospective profits of the job.

The question, then, is directly presented whether, under the contract and the law, the respondent was justified in quitting the work under the contract, and is entitled to recover the profits that he would have realized had he continued and completed the work thereunder.

Recurring to the facts: said flume, trestles, etc., were to be constructed in strict conformity with plans and specifications to be thereafter furnished by the chief engineer of

said canal company, and it appears from the record that such plans and specifications were not complete at the time of the making of said contract; that in the construction of said canal and flumes, changes in the plans and specifications were made and anticipated as shown by the contract. The evidence showed that very extensive changes were made. The canal itself, in some instances, was constructed a mile from its original location. The original estimate of the amount of lumber required was 1,500,000 feet, and the amount actually used was over two million feet. Just when the specifications were prepared was not shown, as the court would not permit any evidence to be introduced on that question, but it does appear that there were no definite or certain plans or specifications, and no definite or certain location of the canal on the ground at the time said contract was made. Under these facts, it is evident that the steps to be pursued were, first, the location of the canal with certainty, and after that the preparation of plans and specifications by the chief engineer, who was not an officer of the appellant company, but was an officer of the canal company.

Said plans and specifications included what was called "cutting lists," which were lists of the length, dimensions and quantity of lumber and timbers required for said flumes and trestles. After those were made and the cutting lists delivered to the appellant and their delivery to the sawmills or to those who furnished the lumber, the lumber must be cut and delivered on the line of the canal.

Considerable testimony in regard to these matters went in without objection, but when the matter was called to the attention of the court, the evidence of the circumstances and conditions surrounding the making of the contract was rejected over the objection of the plaintiff, and that action of the court is assigned as error.

The record shows that this work was one of considerable magnitude. The canal was about thirty-four miles long, the line of which was not established at the date of signing said contract. The timber work involved in the contract consisted of trestles and flumes along the first sixteen miles of

the canal. One of the trestles was sixty-five feet high and another forty-five feet high. Those facts indicate that in the construction of a work of such a character, plans and specifications of a definite character must be the guide. That being true, the dimensions of the material and lumber to be used therein and the manner in which it was to be put together must be known in advance. Then the question is directly presented whether a proper construction of the contract would justify the court in taking into consideration the facts and circumstances surrounding its making.

After carefully considering the whole matter, we conclude that the court erred in rejecting evidence of the facts and circumstances surrounding the making of the contract.

It is clear that the parties to the contract knew that the plans, specifications and cutting lists must be furnished before the work could proceed, and as it was not the duty of the appellant to furnish said plans, specifications and cutting lists, but the duty of the canal company to do so, we think it essential to a proper construction of the contract that the facts and circumstances surrounding its making must be taken into consideration by the court in construing it. Especially is that true where a party quits and abandons a contract, like the one under consideration, and seeks to recover prospective or future profits on the ground that the contractor failed to furnish the material at the exact time and place demanded, and where it appears that there was material at other points on the canal that might have been put in place by the contractor.

We do not hold that the respondent might not have quit the job and recovered what was then due him because of the failure of the appellant to furnish the lumber at the times and places demanded, but we do hold that under those facts and circumstances he could not quit the job and recover prospective profits for the completion of the job.

In order to properly construe the contract sued upon, the court will place itself in the position of the parties who made the contract, as nearly as can be done, by admitting evidence of the surrounding facts and circumstances. (Page on Con-

tracts, sec. 1121; *Merriam v. United States,* 107 U. S. 437, 27
L. ed. 531, 2 Sup. Ct. Rep. 536; *True v. Rockyford Canal etc.
Co.* (Colo.), 85 Pac. 842; *Westheimer v. Thompson,* 3 Idaho,
560, 32 Pac. 205.)

It certainly was contemplated by the parties that the plans
or cutting lists would be made by the engineer in chief, who
was an agent or employee of the canal company and not of
the appellant, and that these would be delivered to the de-
fendant and by it to the millmen, after which the lumber
would be delivered. Under those circumstances, there would
be no breach of the contract by the appellant if it used all
reasonable diligence in having sawed and in delivering the
lumber after the lists were delivered to it, and the delay by
the engineer would not make it liable for prospective profits
unless it was shown that appellant terminated the contract
and compelled respondent to abandon it.

That provision of the contract requiring the lumber to be
delivered at the time desired by the respondent must be con-
strued in the light of other circumstances. The appellant
was certainly entitled to a reasonable time in which to de-
liver the lumber after the cutting lists were received, and
there certainly would have been no breach until the expira-
tion of such time, that would warrant the recovery of future
or prospective profits. If the appellant has by its neglect or
failure to comply with the exact terms of said contract, oc-
casioned the respondent any injury or damage, the respondent
has his action therefor.

While it is true the contract required the respondent to
have said trestles, flumes, etc., completed and ready for use
on or before the first day of April, 1906, it is also true that
the engineer of the company was to prepare plans, specifica-
tions and cutting lists for such work, and if he failed to
furnish the same in time to have the work completed as con-
tracted for, the failure could not be charged up to the re-
spondent or appellant; and if the respondent was damaged
because of the failure to furnish the lumber, he had his
remedy for such damages, but could not quit the work of his
own accord simply because of the inability of the appellant

to furnish the lumber at the times and places agreed upon, and recover prospective profits.

If the appellant prevented the respondent from going on with the contract by refusing to furnish the lumber and thus terminating the contract, the respondent might then recover his prospective profits, provided he could prove them with reasonable clearness.

The case of *Anvil Min. Co. v. Humble,* 153 U. S. 540, 38 L. ed. 814, 14 Sup. Ct. Rep. 876, is cited by counsel for respondent as sustaining their contention herein. That case involved a contract for mining certain iron ore. It appears that the plaintiffs, Humble et al., were making a profit of about thirty cents a ton for mining such ore and the mining company became desirous of terminating the contract, and they proceeded to do that by preventing Humble and his associates from mining the ore. It appears that the mining company went deliberately to work to terminate the contract, or hinder, delay and prevent the mining of the ore, and the court there held that a party to a contract under those facts and circumstances had a right to quit the contract, terminate it, and recover the prospective profits which would have resulted to them from its completion.

That is a very different case from the one at bar. It nowhere appears that the appellant refused to furnish the lumber at the points desired by the respondent, and its counsel undertook on the trial to show the facts and circumstances surrounding its failure to furnish the lumber, and the court refused to permit them to do so. The court held that the respondent was entitled to have his contract carried out to the letter; if not, he might terminate the contract and recover all prospective profits. If, on a retrial of the case, it appears that the failure to furnish the lumber was intentional on the part of the plaintiff, that it was conducting the matter in a way to force or compel the respondent to quit the contract, then and in that case the respondent would be entitled to recover prospective profits; but otherwise, if it be shown that the appellant had in absolute good faith done all

that it could reasonably do to furnish the lumber at the times and places demanded by the respondent.

The inability of the defendant to deliver the necessary additional lumber at the Plowman flume just at the time the respondent wanted it would not authorize plaintiff to terminate his employment and sue for all prospective profits. We understand the correct rule to be in a case like the one at bar, that where an action is brought by the contractor before the completion of the work, to authorize a recovery for prospective profits, a willingness on his part to complete the work and a refusal by the other party to be further bound by the contract or an abandonment of it by him must appear.

In *Wharton et al. v. Winch,* 140 N. Y. 287, 35 N. E. 589, the court held: "In view of the structure of this contract, it would seem to be clear that the mere failure of the defendant to make punctual payment of an installment due according to its provisions was not such a breach of the entire contract as to permit the plaintiff to refuse to proceed further under it and recover damages for the profits which he would have earned had the contract been fully performed on his part."

There is no doubt but what a party may quit a contract before it is fully performed on a breach thereof by the other party, but that does not necessarily in all cases give him the right to recover prospective profits. While the failure on the part of the appellant to furnish the lumber as specified in the contract would have justified the respondent in refusing to proceed further with the contract, under some circumstances, it would not have entitled him to recover prospective profits.

In *Lake Shore & M. S. R. Co. v. Richards,* 40 Ill. App. 560, it is stated by the court: "We have no doubt that the conduct which will justify a party in abandoning the contract and entitle him to recover, not only for the work he has done but for the profits he can prove he would have made had the contract gone on, must be such as in effect prevents the performance of the contract; the acts for which the aban-

donment is made must be such as indicate an intention not
to fulfill and such as affect the very substance of the contract;
moreover, we think it should appear that such acts are de-
liberately done, and are not the result of something inad-
vertently overlooked.''

In *Fitzgerald v. Hayward,* 50 Mo. 516, it was held that a
simple breach of a contract on the part of the other party
would not authorize one party to stop work and recover for
the unperformed work. It might justify him in abandon-
ing his contract and entitle him to recover for the work al-
ready done, and to entitle him to a recovery for prospective
profits, he must be prevented from proceeding with his work
by the unauthorized interference of the other party.

The inability of the appellant to deliver the necessary ad-
ditional lumber at the Plowman flume when demanded by
the respondent did not authorize him to terminate his em-
ployment and recover all the prospective profits, as it is not
the breach of every covenant of a contract that may operate
as a discharge of the adversary party. To have that effect,
the covenant broken must be a vital term of the contract,
the breach of which makes the performance impracticable
and the accomplishment of the purposes impossible. In such
cases, it is held in 3 Page on Contracts, section 1450, the party
not in default must perform and sue for damages if he has
suffered any. (*Kaufman v. Rader,* 108 Fed. 171, 47 C. C. A.
278, 54 L. R. A. 247; *Monmouth Park Assn. v. Warren,* 55
N. J. L. 598, 27 Atl. 932.)

It is shown by the record that a dispute arose as to who
should pay the cost of moving the respondent's camp, but
that fact alone would not authorize the respondent to ter-
minate the contract and recover prospective profits for the
completion of the contract. It was held in *Warren v. Stod-
dart,* 105 U. S. 224, 26 L. ed. 1117, that where a party is
entitled to the benefit of a contract, and can save himself
from a loss arising from a breach of it at a trifling expense
and with a reasonable exertion, it is his duty to do it, and he
can charge the delinquent with such damages only that with
such reasonable endeavors and expense he could not prevent.

The question is raised as to the rule by which damages are computed in this class of cases, or in cases where a party has been prevented from completing his contract and is permitted to recover prospective profits. In the case of *United States v. Speed*, 8 Wall. 77, 19 L. ed. 449, the court said: "We do not believe that any safer rule or one nearer to that supported by the general current of authorities can be found than that adopted by the court, to wit: The difference between the cost of doing the work and what the claimants were to receive for it, making a reasonable deduction for the less time engaged and for the release from the care, trouble, risk and responsibility attending a full execution of the contract." (*Insley v. Shepard*, 31 Fed. 869.)

If the rule was established that one of the parties to a contract could terminate it at any time upon the other party failing to comply with all its provisions and thereafter recover all of the prospective profits, without making any deduction whatever for the time that it would have taken to complete the contract, and for the release from the care, trouble, risk and responsibility attending its full execution, that would apparently place a premium upon the termination of contracts by one party when the other party was doing all in his power to comply with its provisions.

Of course, it is not intended to convey the idea herein or to hold that parties may carelessly, negligently or otherwise fail to comply with the provisions of their contract and not be responsible to their adversary party for any damages that may result to him therefrom; but what we do hold is that in a contract like that under consideration, where one party is endeavoring in good faith to carry out its provisions, the other party cannot terminate the contract and recover all prospective profits, but in such cases the measure of damages is the value of the work already performed, and whatever damages the party has sustained by reason of the delay occasioned by the other party, and the loss occasioned, if any, on account of having procured the necessary outfit and appliances for carrying out the contract, should be divided be-

tween the parties in proportion to the work already done and that yet to be done.

For the reasons above given, the judgment must be reversed and a new trial granted, and it is so ordered.

The costs of this appeal are awarded to the appellant.

Ailshie, C. J., concurs.