## HOLMES COUNTY, MISS., v. BURTON CONST. CO. et al.

(Circuit Court of Appeals, Fifth Circuit.    June 18, 1920.    Rehearing Denied August 3, 1920.)

No. 3486.

1. **Counties ☞213—Failure to act on claim equivalent to disallowance for purpose of suit.**

    Under Code Miss. 1906, § 311 (Hemingway's Code, § 684), providing that a claim against a county must first be presented to the board of supervisors, and that on refusal of the board to allow it suit may be brought thereon, failure of the board to act on a claim presented within a reasonable time is equivalent to its disallowance for purpose of suit.

2. **Counties ☞21½—Can be bound only by action of governing board entered on minutes.**

    A county can only be bound to the extent and within the limitations which its regularly constituted authorities have bound it, and having contracted by an order of its governing board entered on its minutes, no additional burden or obligation can be imposed on it, except by an order duly entered on the minutes of the board.

3. **Highways ☞113(4)—Direction of verdict for contractor for excess work held error.**

    Direction of a verdict for a contractor with a county for road work, for excess work done as extra work, *held* error, where the contract expressly provided that excess work of the same kind as that specified should not be considered extra work, but be paid for at contract price, while extra work was to be paid for on a different basis.

4. **Highways ☞113(4)—Engineer in charge of work not authorized to determine legal effect of unambiguous terms of contract.**

    An engineer in charge of work done under a contract for making roads is not authorized to determine the legal effect of plain and unambiguous terms of the contract, which is the duty of the courts, but his authority extends only to the application of his engineering judgment to matters of fact in controversy.

5. **Highways ☞113(4)—Breach of contract by county not authorizing abandonment and recovery of prospective profits.**

    Failure of a county to furnish gravel to road contractors as required by the contract *held* not to authorize the contractors to abandon the contract and recover their prospective profits.

6. **Damages ☞40(2)—To warrant recovery of profits, breach must relate to essential part of contract.**

    To warrant the recovery of profits for the uncompleted portion of a contract, the breach relied upon must be in such an essential part of the contract as that it makes the fulfillment of the contract impossible; there being a clear distinction between acts which might justify a contractor in abandoning his contract with recovery for work already done, and

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

those which would justify him in abandoning the contract and recovering for prospective profits.

**7. Damages ☞124(3)—Measure of prospective profits recoverable on breach.**

A contractor who has abandoned his work for an alleged breach by the other party, even where entitled to recover prospective profits, may not select the more valuable portion of the contract and recover on that portion, without balancing against it losses and expenses which completion of the entire contract would have entailed.

In Error to the District Court of the United States for the Southern District of Mississippi; Robert T. Ervin, Judge.

Action by the Burton Construction Company and W. F. Allen against Holmes County, Miss. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

E. F. Noel, of Lexington, Miss., and N. T. Currie, Asst. Atty. Gen., and James A. Alexander, of Jackson, Miss., for plaintiff in error.

James G. Holmes, of Yazoo City, Miss., for defendants in error.

Before WALKER, Circuit Judge, and CALL and HUTCHESON, District Judges.

HUTCHESON, District Judge. This is a writ of error from a verdict and judgment in favor of the defendants in error, plaintiffs below, who will hereafter be referred to as plaintiffs, against the plaintiff in error, hereinafter called the defendant. As correctly stated by the defendant in error in its brief, this is a simple suit on contract, and the rights of the parties must be measured by their contract.

The plaintiffs were road contractors, and the contract out of which this controversy arose was a contract between plaintiffs and defendant for the construction of certain roads in the Fifth district in Holmes county, Miss. Plaintiffs claimed in their pleadings that the defendant breached the contract in three different particulars: (1) That it failed to furnish gravel when and as it should have done; (2) that it failed to furnish pipe when and as it had agreed; and (3) it required plaintiffs to do extra work, and refused to pay them for it—and that because of the breach in these particulars the plaintiffs had been unable to complete the contract. They sued for the 15 per cent. retained by the county out of previous estimates, for the profits they would have made on hauling the gravel, if it had been furnished, and for the amount claimed to be due them for the extra work.

[1] The defendant contended: (1) That plaintiffs had no standing in court, because they did not first obtain final action on their claim at the hands of the board of supervisors, and (2) that the claimed "extra" work was not in fact extra, but was provided for in the contract to be paid for at contract prices; that the defendant quit, not because of the failure to furnish gravel or pipe, but because of the refusal of the engineer to comply with their unwarranted demand that the unit mile instead of the average mile basis should be adopted in the payment for hauling the gravel; and, finally, that the plaintiffs had suffered no loss of profits, but had visited heavy losses on the county by abandoning the work before completion.

The statutes of Mississippi, where this contract was made and performed in part, provide as follows:

Sec. 311, Mississippi Code 1906 (Hemingway's Code, § 3684): "A person having a just claim against any county shall first present the same to the board of supervisors thereof for allowance; and, if the board shall refuse to allow it, may appeal the judgment of the board to the circuit court, or may bring suit against the county; and, in either case, if such person recover judgment, the board of supervisors shall allow the same, and a warrant shall be issued therefor."

The plaintiffs, on, to wit the ———— day of November, 1917, and prior to the November meeting of the board of supervisors, made out and filed with the board of supervisors the following claim on which this suit is based.

To 15 per cent. retained on estimates.............................$ 2,492.81
Extra excavations of 26,414 cubic yards of dirt, which exceeded
   the estimated amount, plus 30 per cent., and on which the en-
   gineer agreed to pay 5 cents per yard additional............... 1,320.70
Profits on hauling gravel under said contract, which would have
   amounted to ............................................... 7,500.00
Amount for hauling gravel.................................... 181.50
                                                            —————
                                                           $11,495.01

No action was taken by the board, either to approve or disapprove the claim at that meeting, or at any of its subsequent monthly meetings; the consideration of the claim being postponed, sometimes for reasons stated, and sometimes on a mere order of postponement. The claim not having been approved at the December meeting of the board, suit was brought in the District Court of the United States in cause No. 6,736, and thereafter, the board still not having approved the claim, the declaration was amended setting up that fact.

To this declaration a demurrer that the suit was premature, because the declaration showed on its face that the board of supervisors had not taken action on the claim, was sustained, and plaintiff thereafter filed an amendment, claiming that the board still had failed to approve the claim, and after the August meeting of the board filed another suit in the same court, substantially setting up the same facts, and alleging that up to that date the supervisors had refused to allow the claim. The two suits were consolidated, and, defendant's demurrers having been overruled, the cause went to the jury on the issues, first, as to whether the board of supervisors had had a reasonable time to act on the claim before suit was filed; and, second, whether or not the county had breached the contract, and what amount plaintiffs were entitled to recover on their claim.

As to the first matter, the necessity for an affirmative refusal of the claim by the board before suit could be brought, we think it clear that neither the terms of the statute nor the decisions of the courts of Mississippi relied upon by defendant supports the contention which it makes. Reason and the considerations which underlie the enactment of such statutes do not give to the word "refuse" the meaning defendant asserts. The failure to allow, after a reasonable time, is

equivalent, for the purposes of suit on a claim, to an actual denial. The purpose of the presentation is to give the county an opportunity to examine and consider the claim on its merits before being subjected to a suit. It is not the purpose of the statute, nor can it be given the effect, to permit the board to defeat a claim by nonaction. Such a construction would amount to lodging with the board the power to deny suitors access to the courts. We are therefore satisfied that plaintiffs' suit was not prematurely brought, and no error was committed by the court in that regard.

We think it equally clear, however, that the court below erred to the prejudice of the defendant, and that the cause must be reversed. In view of the fact that the cause will be remanded, and many of the errors assigned will almost certainly not occur upon another trial, we shall discuss only the two which are fundamental, and which underlie the whole course and result of the trial.

As we have taken occasion to say, this is a simple suit on contract, and the ordinary and simple rules which involve suits on contracts apply. One of the most definite and unalterable of these rules is that, "as a man binds himself, so shall he be bound," or, stating it otherwise, the provisions of a contract, when unambiguous and plain, must measure the rights and obligations of the parties to it.

[2] We think it can be stated as a general proposition of law that a public body can only be bound to the extent and within the limitations which its regularly constituted authorities have bound it. Text-books and cases are uniform on that point, and it needs no citation of authorities to support the rule that no contractual rights can spring against a municipality, except in strict accordance with the law, and the corollary is equally well established that a municipality must act by order entered on its minutes with reference to its contract, and, having contracted, no additional burden or obligation can be imposed upon it, except by an order duly entered upon the minutes of the board.

It is equally clear that, where the relations are fixed by written contract, it is the duty of the court to construe the meaning of the unambiguous words of the contract. The obligations of the respective parties under this contract may be briefly stated as follows:

Unless prevented by fault or breach on the part of the defendant, it was the duty of the contractor to perform and complete the work in accordance with the terms of the contract, under the supervision of the engineer; the engineer having authority as follows:

"All work done or material furnished are to be subject to the acceptance or rejection of the engineer, who shall in all cases determine the amount, quality, fitness, and acceptability of the work and materials to be paid for, and decide finally and conclusively all questions of differences of opinion that may arise as to the interpretation of the plans and specifications or the fulfillment of the terms of this contract."

In addition, the specifications further provided:

"All payments are to be made in cash. * * * If the work progresses according to contract, the contractor will be paid monthly 85 per cent. of the contract price of the work done and materials furnished. * * *

"As soon as the engineer is notified of the completion of the work, and can

assure himself by tests, inspection, or otherwise that all the provisions of the contract have been carried out, he will make a final estimate of the quantities and value of the work done under the contract and deduct previous payments. He will report this estimate to the commission, together with deficiency therein. Within thirty days after the approval of this estimate and report by the commission and the engineer, the amount of the estimate will be paid, less any charges or damages herein specified."

"*Quantities.*—The quantities of work and material as given herein are approximate only. The right is expressly reserved for the engineer to increase or decrease the quantities to such an extent, within 30 per cent. of the original, as he may find necessary for the proper completion of the roads, or from the limits of the appropriation; if such alterations increase the quantities, the added work or materials will be paid for along with the original, at the rate stipulated in the contract; the change in quantities shall not warrant any claim for damages, or for anticipated profits on the work or materials dispensed with, the contract rates being paid for the actual quantities used."

"*Extra Work.*—Quantities of work or materials in excess of those named in the proposal, and of the same kind, are not to be considered as extra work; and such excess, when ordered by the engineer, will be paid for at contract rates, as hereinbefore specified.

"The price for extra work will be either (1) a price agreed upon by the contractor and the engineer; or, if no agreement can be made, (2) cost plus 10 per cent.

"*Contractor's Damages.*—Any claim by the contractor for damages sustained by act of the commission or its agents shall be fully stated in writing to the engineer within five days from the date thereof. Within thirty days from the date thereof an itemized statement of the nature and amount of this damage shall be filed with the engineer, so as to be considered by the commission at their next meeting; otherwise, the claim shall lapse by default."

The contract provided:

"The parties of the first part further agree to do, in the manner stipulated in the specifications, any extra work required by the written order of the engineer, for the proper completion of the item or items comprised herein."

There was no evidence of any written order from the engineer requiring plaintiffs to do the additional excavation as extra work, and it appears to be undisputed that, while the extra excavation for which plaintiffs sued was more than 30 per cent. in excess of the original estimate of quantities, it was of the same kind of work as the excavations figured on in the bids. Eight estimates were issued by the engineer during the progress of the work, and accepted by the plaintiffs, though plaintiffs claim that they protested that the estimates were not sufficient. No written claim was ever filed with the engineer, setting out the plaintiffs' damage; no final estimate was ever made by the engineer, nor final voucher issued.

[3] The court instructed the jury peremptorily to find for the plaintiffs for the extra excavation, and, if they believed the defendant had breached the contract, to find such profits as they would have made on the hauling of the gravel. In both of these particulars the court erred. As to the matter of extra excavation, the contract on its face, in plain and unambiguous language, prohibited payment as extra for work of the same kind described in the proposals, and the undisputed proof showed that this excavation claimed for as extra work, was of that kind.

[4] It was contended by plaintiffs, and in this the trial court erred, that the jury should be peremptorily charged to find for the plaintiffs on this issue, because the engineer had construed the work to be extra work, and his construction, under the contract, was binding. This contention will not do, for in the first place the court did not submit to the jury as an issue of fact whether the engineer had construed the work to be extra, though there was positive testimony from the engineer that he did not so construe it, and all his estimates were made upon the contrary construction; and in the second place the engineer could not in any event make contracts for the county.

The duty of construing doubtful clauses of a contract for work and labor does not authorize an engineer to determine the legal effect of plain and unambiguous terms. His authority extends only to the application of his engineering judgment to matters of fact in controversy. The court alone has the right, and is charged with the duty, to construe the legal effect of plain and unambiguous terms, and he should have charged the jury for the defendant on this issue.

[5] Nor is there any theory upon which the recovery by plaintiffs of profits lost by reason of the failure of the county to furnish gravel can be sustained. The general rules of law governing the recovery of profits on the uncompleted portion of a contract are thus laid down in 17 Corpus Juris, p. 855:

"Where without fault on his part one party to a contract, who is willing to perform it, is by the other party prevented from so doing, the primary measure of damages is the amount of his loss, or, as it has been otherwise expressed, the value of his contract."

"To warrant the abandonment of the work and a recovery of prospective profits, the breach upon the part of the other party must be such as to make performance of the contract impracticable, and the accomplishment of the object impossible. Acts which might justify the contractor in abandoning his contract, and enable him to recover for work already done, are not necessarily sufficient to allow him to recover for prospective profits."

In Harris v. Faris-Kesl Const. Co., 13 Idaho, 211, 89 Pac. 760, a case similar to this, where the plaintiff abandoned the work because of the failure of defendants to furnish certain material, and sued for prospective profits, the court held that, while he was entitled to recover the value of the work already done, he was disentitled to recover for prospective profits saying:

"We understand the correct rule to be, in a case like the one at bar, that when an action is brought by the contractor before the completion of the work, to authorize a recovery for prospective profits, a willingness on his part to complete the work and a refusal by the other party to be further bound by the contract, or an abandonment of it by him, must appear. * * * The inability of the appellant to deliver the necessary additional lumber at the Plowman flume when demanded by the respondent did not authorize him to terminate his employment and recover all the prospective profits, as it is not the breach of every covenant of a contract that may operate as a discharge of the adversary party."

In U. S. v. Speed, 8 Wall. 77, 19 L. Ed. 449, the measure of damages in this character of case was stated as follows:

In a case where a party has been prevented from completing his work, the measure of damages is "the difference between the cost of doing the work and

what the claimants were to receive for it, making reasonable deduction for the less time engaged, and for the release from the care, trouble, risk, and responsibility attending a full execution of the contract."

Plaintiffs' proof in this case on the issue of profits has squared with none of these requirements. The rules require that they show a breach by the defendant of its contract. The proof shows no breach; for, while the pleadings allege that plaintiffs abandoned the contract because of the county's failure to furnish pipe and gravel, the fact is they abandoned it because of the engineer's refusal to accede to their unwarranted demands, first, that they be paid for excess yardage as extra, and second, that they be paid for the gravel haul on the basis of the unit mile, rather than the average mile haul.

The engineer construed the contract as providing for payment on an average mile basis, and so made his estimates, and the plaintiffs in their suit in this case accepted his construction and stated their damages on the same basis. As to these matters there is no dispute. As Burton himself testified:

"Allen [his partner] abandoned the work because they would not pay for the excess yardage and the unit mile. I continued the work until he refused to pay the proper amount for the gravel. * * * I left because I was not paid according to the contract basis and agreement."

[6] The law required further that, even if there had been a breach by the county, in order for the plaintiffs to recover profits for the uncompleted portion, it must appear that they were ready and willing to perform the contract, but that the breach was in such an essential part of it as that it made fulfillment impossible. That this was not the case appears from plaintiffs' proof. The plaintiff Burton testified:

"I promised to complete this work if the commissioners would pay the agreed price"

—showing conclusively that, even if the county had breached, so as to give the plaintiffs the right to cease performance on their part, there was not such a breach as entitled plaintiffs to refuse to perform and then claim damages for the unperformed portion.

Finally, the rule requires that, if such a breach exists as to entitle the recovery of profits, the measure of damages shall be the loss of the plaintiffs, measured by the value of the entire contract, whereas neither plaintiffs' pleadings nor their proof supported such a measure.

[7] Plaintiffs pitched their demand upon their supposed right to segregate from the entire contract the valuable portion of it, to wit, the gravel haul, and sought to recover the profits on this, without balancing against it the losses and expenses which the completion of the contract would have entailed. This they could not do.

For the reason that the court below erred in the particulars noted, the judgment will be reversed, and the cause remanded.