## CITY OF ORLANDO v. MURPHY.

## MURPHY v. CITY OF ORLANDO.

### Nos. 8488, 8489.

Circuit Court of Appeals, Fifth Circuit.

Jan. 20, 1938.

George Palmer Garrett, W. H. Poe, W. L. Tilden, and Merton S. Horrell, all of Orlando, Fla., for the City.

Thos. B. Adams and Louis Kurz, both of Jacksonville, Fla., and J. Thomas Gurney, of Orlando, Fla., for Murphy.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

After the reversal of his judgment,[1] plaintiff Murphy sought, by tendered amendments, to carry on the litigation in the reversed cause upon new pleadings; the defendant City sought, by motion in that cause, to have the costs taxed in its favor. Leave to file the amendment to further litigate was on January 4, 1937 denied, upon the ground that our reversing decision and opinion, "definitely and finally decided that under the contract in question, damages for delay and anticipated profits could not be recovered," whereupon, on February 14, 1937, final judgment was entered in that cause for plaintiff for the $1,817.63 for work completed, which our opinion had approved, and for costs, and against the defendant on its motion to tax costs.

No. 8488 is the appeal of the plaintiff Murphy from that judgment, thus bringing his litigation to a close. It is the appeal, too, of the defendant City, from the judgment against it for costs. Both

---

[1] City of Orlando v. Murphy, 5 Cir., 84 F.2d 531.

of the appeals were applied for and allowed on May 10, 1937.

On February 1, 1937, plaintiff filed in the same court in which the reversed action was pending, what purported to be a new suit on the same transaction. In it he sued on the same contract, alleged the same matters, and sought the same judgment which, in the amendments he had unsuccessfully endeavored to file, he had alleged and sought.

On March 15, 1937, defendant filed a demurrer to this declaration, in which, under many heads, it was in effect urged that the suit was a mère effort to relitigate matters already determined adversely to the contention of the plaintiff in this court, and by the District Judge in the reversed cause.

On May 10, 1937, the demurrer was sustained, and plaintiff, electing to stand on the declaration, and declining to plead further, there was final judgment on the demurrer. No. 8489 is the appeal of plaintiff from that judgment.

■ Paragraph 3 (Actions after Reversal of Plaintiff's Judgment),[2] section 4648 (Extensions in the Time of Limitations), Florida General Laws, upon the purported authority of which appellant brought his new suit, is a part of the limitation laws of Florida, article 1, chapter 26, "Limitation of Actions." Its object and effect is to suspend "the running of [the statute of limitations] during the pendency of the suit, up to the time of its reversal and for one year thereafter," as to causes of action arising out of the transaction in suit. Livingston v. Maleiver, 103 Fla. 200, 137 So. 113, at page 119. Its benefits may be availed of as they were in the Livingston suit, as well by amendment in the reversed action, as by the filing of a new suit. The plaintiff, however, whose judgment has been reversed, must elect between proceeding by amendment in the reversed suit, and filing a new one. Erickson v. Insurance Co., 66 Fla. 154, 63 So. 716. He may not, as he has sought to do here, litigate the same matter in two actions. Having elected to amend in the reversed suit, and proceed to judgment there, he is bound by that judgment until reversed; he may not

file a new action to litigate the same matters. Besides, the statute under which he claims the right to file does not enlarge or affect, indeed, it has nothing whatever to do with, the right of a person after reversal to retry his case, either in the same action or by a new suit, when the law of the case, as settled by the reversing decision and opinion, leaves nothing to retry.

The District Judge was right, then, in refusing leave to file the new suit and ordering it dismissed. The judgment appealed from in cause No. 8489 is affirmed.

■ On his appeal in No. 8488 appellant stands no better. The District Judge was right in refusing him leave to file the proffered amendments, right in the reason he gave for doing so; that by its decision on the former appeal this court definitely and finally decided that under the contract in question, damages for delay and anticipated profits cannot be recovered.

■ The rules governing procedure in a federal trial court after reversal are well settled. Where the merits of a case have been once decided on appeal, the trial court has no authority, without express leave of the appellate court, to grant a new trial and rehearing, or a review, or to permit new defenses, on the merits to be introduced by amendment. Thus, if a case is affirmed on appeal, there is res adjudicata, and no power exists after the term to alter the decision. The same is true where, on reversal, a mandate is issued requiring the entry of a specific judgment. Where the reversing decision directs the entry of no specific judgment, but remands the cause for further proceedings in accordance with the opinion, the trial court, though receiving the cause for a retrial, is bound by all its rules, as the law of the case. Seagraves v. Wallace, 5 Cir., 69 F.2d 163; Peavy-Byrnes Lumber Co. v. Com'r, 5 Cir., 86 F.2d 234.

■ When, as here, the reversing decision, though it directs the entry of no particular judgment, yet comprehensively canvasses and finally disposes adversely of the right of plaintiff to recover, and remands the cause for further proceedings not inconsistent with the opinion, the Dis-

---

[2] "If an action shall be commenced within the time prescribed therefor, and a judgment therein for the plaintiff be reversed on appeal or writ of error, the plaintiff * * * may commence a new action within one year after the reversal."

trict Court should not permit the filing of, and the retrial of the case on, amendments which do not go to and remove the adjudged deficiencies in the cause of action. It should, as was done here, refuse the amendments and proceed to judgment in accordance with the reversing opinion.

Appellant apparently assumes and has sought to replead his case upon the assumption that the judgment was reversed for want of pleading and proof that the City was at fault in failing to provide funds to complete the improvements.

This is an incorrect view of the decision. It wholly misjudges both its basis and its comprehensive and sweeping effect. The judgment was reversed, not because of any deficiencies in the pleadings, but because the contract under which the work was to be done would not support a recovery of the damages for delay, and for loss of anticipated profits on work not done.

The claim for damages for delay was definitely and finally rejected upon the authority of Wells Bros. Co. v. United States, 254 U.S. 83, 41 S.Ct. 34, 65 L.Ed. 148, and Wood v. United States, 258 U. S. 120, 42 S.Ct. 209, 66 L.Ed. 495. It was as definitely and finally decided that the terms of the contract, and of the specifications expressly made a part of it, restrict the consequences of undue delay on the part of the City to a mere prolongation of the contract time.

The recovery of anticipated profits was dealt with and disposed of with equal finality and conclusiveness. Assuming without deciding, that an obligation might be implied against the City to pay for completed work and materials out of its general fund, even though the special fund which the parties contracted in respect of was empty, it was definitely decided, under the contract in this case, that such an obligation "cannot reasonably be implied to support a claim for anticipated profits. A positive agreement to pay for completed work from a specific fund might imply a warranty of an adequate fund, whereas no implication of such a warranty could be based upon the implication of an agreement to pay anticipated profits. * * * These considerations lead to the conclusion that, when the contract was made, both parties contemplated it might be necessary to suspend or abandon operations if the special fund were depleted and could not be replenished. Assessments according to benefits cannot be collected to pay for anticipated profits on improvements not to be made, and it is unreasonable to infer that the parties contemplated anything of the kind." 5 Cir., 84 F.2d 531, 535.

The case of R. M. Grant & Co. v. City of Lake Worth, 5 Cir., 40 F.2d 579, was differentiated by pointing out that that was a suit to recover for completed work, and not, as here, for anticipated profits. No case among the many cited by appellant in support of his claim of an implied obligation on the City's part to keep the special fund replete supports his claim to recovery of anticipated profits. All of them involved completed work. McQuillan, vol. 5, §§ 2089, 2090, in treating of the liability of a municipality, on a contract for payment out of a special fund cites many cases which have implied liability upon the municipality for completed work, where failure of the special fund is attributable to the City's fault. He cites no case contrary to our former decision, that under a contract of the kind in question here, anticipated profits may not be recovered. We have found none. If appellant was advised during the time work on the contract was under way that the City was failing in any of the duties imposed upon it, either in designating the work, or in keeping the funds replenished, it was incumbent upon him not only to say so, but to act accordingly, by resorting to mandamus to compel the desired action. People ex rel. Ready v. Mayor, etc., of City of Syracuse, 144 N. Y. 63, 38 N.E. 1006; cf. Powell v. City of Ada, 10 Cir., 61 F.2d 283. He could not, as he did here, consent to an indefinite postponement and finally quitting, sue for his profits without doing the work which alone, under the contract in suit, would have entitled him to them.

We thought and decided when the case was here before, we think and decide now, that the contract, construed by itself and in the light of the actions and conduct of appellant under it, will not support an action for anticipated profits. We think it will not support such an action (1) because it was never contemplated that the City's general credit would be so engaged as that a failure to keep funds in supply would subject the City to damages for anticipated profits; (2) because by the provisions of the contract and specifications, set out in the note in the

former opinion, it was clearly contemplated and provided that the City should have the right to vary the quantities and to change the plans, and if so varied and changed, the contract price should be increased or diminished at the unit rates. We were then, we are now, further of the opinion that if the contract could be construed as entitling the contractor upon breach of it, to sue for anticipated profits as damages, there is no proof here of a breach justifying the contractor's suit for profits. The undisputed facts appearing in the former record, of which of course we take notice, and found in our former opinion, show that though the contract provided for its completion within two years, and though the whole of the work which appellant claims he was entitled to do was not done in that two years, nor within two years more, appellant claimed no breach for the failure of the City to provide funds, and took no action to require it to do so, but acquiesced in deferment upon deferment, delay upon delay, in proceeding with the work. Finally in 1929, he procured the cancellation of his bond, and without having theretofore or thereafter taken any steps to compel action upon the City's part to provide the funds from which alone the work was to be paid for, he undertook, by this suit, to fix a general liability upon the City, not for work done by him, but for profits on work he did not do.

■ It is settled law that in order to enable a contractor to abandon his contract and sue for anticipated profits, there must be a definite, downright breach which substantially prevents his going on with the contract, and if he quits work under any other conditions, he may not sue for profits. Moore v. Taylor, 42 Hun., N.Y., 45, 58; Holmes County v. Burton Construction Co., 5 Cir., 267 F. 769, 774; Harris v. Faris-Kesl Const. Co., 13 Idaho, 211, 89 P. 760; cf. New York Life Ins. Co. v. Viglas, 297 U.S. 672, 679, 56 S.Ct. 615, 617, 80 L.Ed. 971.

■ But if we could agree with appellant that the reversal sent the cause back for retrial upon allegations and proof that there was a failure of the fund to which the parties had agreed to look, because of the City's fault in not providing it, the pleadings which he tendered fell far short of alleging this. There were indeed some statements by way of conclusions, that the City was at all times able to provide itself with funds by the sale of bonds, but the only facts alleged as showing default on the City's part, in the implied obligation to furnish funds which the pleader alleged it to be under, were: (1) That the City could have sold its bonds at 95, and failed to do so; (2) that the City let contracts to others in addition to plaintiff, thus impairing its ability to provide bond funds; and (3) that with the consent of appellant, and under an agreement that it would make it up to him, it paved on force account some of the streets included in appellant's contract. None of the matters thus alleged show the City to have been in default; the contract was let under an act providing that the City should sell its bonds at not less than par. It is quite plain that neither the fact that by a later amendment of the act, Sp.Acts Fla.1925, c. 10974, § 7, as amended by Acts Fla.1925, Ex.Sess., c. 11661, § 2, the City was given the right, if it chose to do so, to sell at 95, nor the fact, which appellant pleads, that he was willing to take the bonds at that figure, obligated the City to make this sacrifice to increase the contractor's already considerable profit.

■ It is equally plain that nothing in the contract with appellant either prevented the City from contracting with others for doing additional paving, or prevented it from causing some of the streets included in appellant's contract to be paved, especially with appellant's consent.

■ Further, if, as appellant alleged, the City made a definite agreement with him that it would designate other streets to take the place of those paved by its own forces, and it did not do so, this would not constitute a breach of the contract in suit, but of a wholly separate and independent agreement.

The judgment refusing leave to plaintiff to file the amendments contended for and entering final judgment in the cause was right. It is affirmed.

■ It remains to consider the City's appeal from the refusal to retax costs; and first, appellant's motion to dismiss it.

Appellant's motion to dismiss the appeal of the City of Orlando on the ground that it concerns only costs, Glendale Elastic Fabric Co. v. Smith, 100 U.S. 110, 25 L.Ed. 547, Canter v. American Ins. Co., 3 Pet. 307, 7 L.Ed. 688, is denied. The question raised is not one of fact, and

therefore of discretion as to amounts, but one of law, whether certain items are taxable as costs. Such a matter is appealable. Newton v. Consolidated Gas Co., 265 U.S. 78, 44 S.Ct. 481, 68 L.Ed. 909; Williams v. Sawyer Bros., 2 Cir., 51 F.2d 1004, 81 A.L.R. 1527. Moreover, the judgment of this court ordered the costs in controversy taxed and we may entertain the appeal in support of our jurisdiction.

In the final judgment in the District Court all the costs were dealt with. The suit was one at law, and the plaintiff, Murphy, recovered a part of his demand. He was therefore entitled under the statute (Comp.Gen.Laws Fla.1927, § 4675) to recover costs of suit without reduction or apportionment. But the costs of suit the statute gives are those accruing in the District Court. Such as accrue by reason of an appeal are not included. These are costs of appeal. They follow the judgment on appeal. On the former appeal to this court the City of Orlando obtained a reversal with a mandate ordering "that the appellee, W. T. Murphy, be condemned to pay the costs of this cause in this court, for which execution may be issued out of the District Court." Our Rule 31(3) is: "In case of reversal of any judgment or decree in this court costs shall be allowed to the appellant unless otherwise ordered by the court. The cost of the transcript of the record below shall be taxed as costs in the case." The rule of the Supreme Court on the same subject, rule 32 (formerly 29) (3), 28 U.S.C.A. following section 354, is similar. It uses the language however: "The cost of the transcript of the record from the court below shall be a part of such costs and be taxable in that court as costs in the case." Both rules mean the same thing; the cost of the transcript shall be part of the costs of the case on appeal, the actual fixing of the amount to be left to the District Court whose officers are the ones informed thereon. This then is the practice; the costs of appeal to this court are imposed by order of this court, those due or already paid to or through its officers are here taxed and included in the mandate, the cost of the transcript and any other properly taxable appeal costs are to be ascertained and "taxed" in the District Court on the coming down of the mandate.

Our mandate condemned Murphy to pay all the taxable costs of the appeal. These include the cost of the transcript, but not the sums paid a stenographer for reporting the case or transcribing his report, or preparing the bill of exceptions. These are expenses which, in the absence of a court rule or a settled practice to the contrary, the appellant must bear as he must bear the expense of making and printing his brief. Cf. Pine River Logging & Imp. Co. v. United States, 186 U.S. 279, 280, 22 S.Ct. 920, 46 L.Ed. 1164.

The sums paid out for printing the record have been made part of the taxable costs of appeal. The Act of February 26, 1853, appearing in Rev.St. § 983, and 28 U.S.C.A. § 830, names "the amount paid printers" as among the items of cost generally taxable. "The cost of printing the record" is made taxable as costs in the Court of Claims by 28 U.S.C.A. § 283. As to the Supreme Court, there is a statutory provision, the Act of March 3, 1877, now Jud.Code § 254, 28 U.S.C.A. § 352. "There shall be taxed against the losing party in each and every cause pending in the Supreme Court the cost of printing the record in such case, except when the judgment is against the United States." See Indianapolis & St. L. Railroad Co. v. Collector, 96 U.S. 594, 24 L.Ed. 825. Supreme Court Rule 13(2), 28 U.S.C.A. following section 354, requires the "cost of printing the record and the Clerk's fees" to be taxed against the party against whom costs are given. Our rule 23(6) to the same effect, directs them to be inserted in the body of the mandate. This was not done here, because the record was not printed under the clerk's supervision, but this does not affect the right to recover them as costs.

The transcript of the record was furnished to the court by appellant in printed form under the provisions of 28 U.S.C.A. § 865. The rights and fees of the clerk of the District Court in such a case were discussed in Re King, 5 Cir., 73 F.2d 175; the fees of the clerk of the appellate court in Rainey v. W. R. Grace & Co., 231 U.S. 703, 34 S.Ct. 242, 58 L.Ed. 445. The compatibility of the statute with the equity rules as to the form and contents of the statement of the evidence is discussed in Barber Asphalt Paving Co. v. Standard Asphalt & Rubber Co., 275 U.S. 372, 48 S.Ct. 183, 72 L.Ed. 318. The whole pur-

pose of the statute as expressed in its title was to diminish the expense of appeals. We see no reason to suppose that it was intended that the diminished expense of making and printing the transcript was to be excluded from the costs of the appeal. It was held in Indianapolis & St. L. Railroad Co. v. Collector, 96 U.S. 594, 595, 24 L.Ed. 825, long before the passage of this statute, that the expense of printing done privately, but at a cost no greater than in the regular channel, was recoverable as costs. We are therefore of opinion that the City of Orlando is entitled to have judgment and execution in the District Court for such costs as it paid the district clerk in connection with and for the transcript, and for proper expenses of printing, but not for sums paid a stenographer for preparing the bill of exceptions. We cannot well ascertain the exact amounts from the vouchers in the record. On the appeal of the City of Orlando the judgment is accordingly reversed, with directions to ascertain the tax against Murphy in accordance with this opinion, all of the proper costs of appeal incurred by the City as appellant on the former appeal, except those already taxed and paid in this cause. Murphy, as appellee and appellant in cause No. 8488, and as appellant in cause No. 8489, is hereby condemned to pay all the costs of the appeal incurred in this court, and in the court below, in causes No. 8488 and No. 8489.

The judgments on Murphy's appeal in causes Nos. 8488 and 8489 are affirmed.

The judgment on the City's appeal in No. 8488 is reversed, and the cause is remanded with directions to tax the costs and enter judgment in accordance with this opinion.