SAMMONS–ROBERTSON CO. v. MASSMAN
CONST. CO. et al.

MASSMAN CONST. CO. et al. v. SAMMONS–
ROBERTSON CO. et al.

Nos. 3061, 3062.

Circuit Court of Appeals, Tenth Circuit.
May 20, 1946.

Rehearing Denied June 15, 1946.

54

W. A. Lybrand, of Oklahoma City, Okl. (Henry G. Snyder, of Oklahoma City, Okl., on the brief), for appellant Sammons-Robertson Co.

Edward P. Marshall, of Tulsa, Okl. (Q. B. Roydstun and R. L. Davidson, both of Tulsa, Okl., on the brief), for Grand River Dam Authority.

R. L. Wheatley, of Vinta, Okl., and Roy W. Crimm, of Kansas City, Mo., for Massman Const. Co. and the Surety Companies.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

These appeals from the United States District Court for the Northern District of Oklahoma involve judgments rendered in an action on a contract, instituted by the Sammons-Robertson Company, and on counterclaims by the defendant Massman Construction Company. For the purpose of this appeal, the necessary parties are the plaintiff, herein called Sammons; the Massman Construction Company, herein called Massman; the Grand River Dam Authority, herein called the Authority, and the surety companies, herein called the Surety Companies. The complaint set out twelve separate causes of action, and Massman's answer set out two separate counterclaims on which it sought recovery. The court found for Sammons on some of its causes of action and denied relief on others. It found for Massman on one of its counterclaims and against it on the other. A balancing of these respective findings re-

sulted in a final judgment for Sammons against the Authority for $6,136.37. In Number 3061 Sammons has appealed from that portion of the judgment adverse to it, and in Number 3062 Massman and the Surety Companies have appealed from those portions of the judgment adverse to Massman. The case was largely factual and most of the reasons urged for reversal by the respective parties are that the respective findings of fact complained of are not supported by substantial evidence, or that the trial court misconstrued the legal effect of some of the provisions of the contract. The record consists of 2,215 pages of evidence, and the briefs of the respective parties are extensive. It is obvious that due regard to the length of the opinion will make it impossible to discuss in detail all the items of evidence or all of the legal contentions that are advanced by the various parties. The appeals in the two cases were consolidated and were presented on a single record and briefs, and will be so treated in this opinion.

The Authority was created by the Act of the Legislature of Oklahoma, 82 O.S.A. §§ 862, 881, for flood control and hydro-electric power development purposes. It entered into an agreement with the United States government whereby the United States agreed to finance the construction of a dam on the Grand River. The Authority employed engineers, and thereafter Massman was granted Contract No. 7 for the construction of the dam. The contract contained sixty separate items of work.

Sammons entered into a subcontract with Massman whereby it agreed to perform the work required to be done under the following items, at the prices as follows:

Item 2: Earth excavation in the valley — 35 cents per cu. yd.
Item 3: Earth excavation in roads and parkings — 35 cents per cu. yd.
Item 4: Overhaul — 1 cent per sta. yd.
Item 5: Tamping or rolling fill — 11 cents per cu. yd.
Item 6: Mass rock excavation — 1.75 per cu. yd.
Item 7: Trench rock excavation — 4.70 per cu. yd.

The subcontract provided that the requirements, terms and conditions of the main contract and the plans and specifications therein were made a part of the sub-contract.

In Number 3061, Sammons complains of the adverse rulings of the court on Counts 1, 4, 5, 6, and 7, and in Number 3062 Massman and the Surety Companies complain of the court's judgment on Counts 11 and 12 and of the court's judgment disallowing Massman recovery on one of its counter-claims.

### Number 3061.
### Count 1.

In this count, Sammons sought recovery against Massman for additional compensation for work done under Items 2 and 3 of the contract. Recovery was sought in part on the basis of quantum meruit for work done outside the contract, and in part on an agreement for additional compensation for what was claimed to be extra work. This claim is for work in connection with a dike, the treatment of gravel, and the work around the plant and yards.

Complaint in connection with the dike was that rather than permitting Sammons to dispose of the excavated earth and gravel in the cheapest and most convenient way, Massman required Sammons to construct a dike extending from the region above the damsite across the valley floor for flood protection, which made the disposal of the waste material more expensive. From the evidence it appears that the dike was considered necessary to the construction of the project to protect the work from flood waters. It was discussed between the parties in the negotiations for the subcontract. Sammons constructed the dike without objection. Sammons also sought to recover the added expense of disposing of excavated material beyond the dike on the theory that had the dike been placed 700 feet above the damsite this added expense would not have been necessary. It is sufficient to say that Sammons did not object to the placing of the dam and that it may not now complain because in retrospect it appears that a different location would have been more economical.

Complaint is also made that changing the ratio of the slope of the excavation for the dike from a ratio of three-to-one to one-to-one increased Sammons' expenses. The specifications required the excavation on the down-stream side to be at a slope of

one vertical to three horizontal. Massman requested Sammons to leave the slope at a one-to-one ratio. There was evidence which supported a conclusion that Sammons' only objection to this change was the additional expense of coming back and doing some additional work required by the change, and that it was agreed that if it was required to come back and do such additional work, it should be compensated therefor. Sammons does not claim that it came back to do this additional work.

Sammons also contends that Massman required it to "select, segregate, separate and place gravel" for the benefit of Massman in the construction of roads, ballasting railroads, and making storage piles for future use. The court found that no material was stored for future use. Sammons contends that the job was what is known as a cut-and-waste job, and that being required to do the above things compelled it to carry this material away by shovels and trucks at an added expense. An examination of the entire record refutes this contention. The contract and subcontract clearly reveal that they contemplated the excavated material should be used where practical in other parts of the work, as directed either by the engineers, the Authority, or Massman, and that Sammons should receive extra compensation only where the haul exceeded 700 feet. Sammons was paid under numerous invoices for overhauling charges. Complaint is also made that Sammons was required to refrain from wasting material on the area where Massman's plant was later located, and that the additional haul resulting therefrom increased its cost. This argument is also based on the same theory alluded to, that the contract was what was known as a cut-and-waste job, and that the wishes of the main contractor were therefore subordinate to those of Sammons. Sammons is wrong in this contention. As already found, it was not primarily a cut-and-waste job and it follows that Sammons had no superior right to dump this material on the site selected for Massman's plant. The findings of the court on the various contentions under Count 1 find support in the record and are therefore approved.

## Count 4.

Count 4 relates to three matters. It first deals with the excavation of rock in the gravity section of the dam. It was contemplated that foundation rock would be reached at a depth of approximately 25 feet, and that the overburden would be mostly dirt, but chert and white rock formation was encountered and the excavation had to go much deeper than originally contemplated. It was necessary to excavate to a depth of from 30 to 35 feet before a satisfactory foundation of rock was found. Chandler, the Authority's chief engineer, set slope stakes, and agreed with Sammons to pay for the first eight feet of chert excavation on the basis of earth, and for the balance of the depth on the basis of the price fixed for excavation under Item 6. In order to prevent caving, Chandler set the slope stakes one foot outside the neat line of the concrete structure. The work was done as directed by Chandler, and payment was made according to the agreement reached with him. Thereafter a new engineer came on the job, who reported that Sammons had been paid for excavation outside one foot of the neat line of the structure, although within the slope stake set by Chandler. The Authority thereupon charged back the amount paid for excavation beyond the one foot from the neat line. It is agreed that the wider excavation was necessary. The contract, however, specifically provided that payment would be limited to excavation for one foot beyond the neat lines. It may be conceded that the parties met an unexpected situation which required this additional excavation to be done. But the mere fact that unforeseen conditions arise does not entitle one to additional compensation where he has agreed to do a certain piece of work for a fixed sum. Jackson Materials Co. v. Grand River Dam Authority, Okl.Sup., 170 P.2d 552. Furthermore, the contract provided that if the contractor should consider any work required of him outside the requirements of the contract or consider unfair any rulings of the engineers, he had the right to ask for written instructions or decisions, and within ten days of the receipt thereof he had the right to file written

protests clearly stating in detail the basis of his objection. Holway, the final authority, did not learn until later that this extra rock excavation had been paid for, and when it was discovered, it was charged back. If Sammons contended that the requirement for this additional excavation was outside the terms of the contract, it was his duty to file written protest and ask for written instructions in order to preserve his rights, as specifically provided in the contract. Not having complied with these express provisions of the contract in relation to such matters, he is foreclosed from maintaining an action to recover for such excavations. Sanford & Brooks Co. v. United States, 267 U.S. 455, 45 S.Ct. 341, 69 L.Ed. 734; Jackson Materials Co. v. Grand River Dam Authority, supra.

■ Sammons also sought recovery for 2,885 cubic yards of rock excavation in the slope of the spillway section, 3,245 cubic yards of rock in the overflow portion of the spillway section, excavated outside one foot from the neat line of the concrete structure, all of which it was claimed was done according to Chandler's directions. These items were in sharp dispute, and there was testimony pro and con. The findings of the court are amply sustained by the record.

### Count 5.

■ This count deals with the classification of 91,340 cubic yards of material. The Authority's engineers classified 6,470 cubic yards thereof as rock and the remainder as earth. Sammons claims an agreement that thirty per cent of this material should be classified as rock and the balance as earth. This was denied by Chandler. The trial court's conclusion on this controversy is likewise sustained by competent evidence, and should stand.

### Count 6.

■ This count involves a claim for extra compensation for work done under Item 7—trench rock excavation. Sammons contends that this involved extra work not within the contractual obligations, and that an agreement for extra pay was made. As in all the other disputed items, the trial court had before it conflicting evidence. It is sufficient to say that its conclusions in respect to this matter are supported by substantial testimony. It would serve no useful purpose to set out in detail the various contentions of the parties or an analysis of the testimony which supports the court's findings, and would only further unduly extend the length of this opinion.

### Count 7.

■ In this count Sammons sought damages from delays caused by the refusal of the landlord to allow an immediate entry upon the property. The court found that there was no negligence on the part of the Authority in moving to obtain possession of the premises. In support of the court's disallowance of this claim, it is sufficient to point to the provision of the subcontract which provides that: "We have been advised, and are aware of the fact, that the situs for said work is not now in possession of the Grand River Dam Authority, and we agree that neither you nor the Grand River Dam Authority shall be held liable by us for delay in obtaining title to and possession of any land." There is no evidence in the record which would tend to support a charge of fraud by Sammons against the defendants.

### Number 3062.

■ In Appeal No. 3062 Massman and the Surety Companies have appealed from that part of the judgment allowing Sammons a recovery under Counts 11 and 12. The issue under these counts involved an adjustment of accounts between the parties. As in all other phases of the case, the evidence was in sharp conflict. There is substantial evidence supporting the findings and conclusions of the trial court on Counts 11 and 12. What has just been said is likewise true as to Massman's Counterclaim No. 1. In some instances the court held with Sammons under this counterclaim, and in others with Massman. It made a final adjustment of the items in dispute, and rendered judgment accordingly. We find no error in the court's conclusion in this matter.

■ In its second counterclaim Massman sought damages for Sammons' alleged

**58**

failure to return and complete certain work under its subcontract. The court resolved this issue against Massman. In a letter of August 28, 1939, to Sammons, Massman stated that Sammons had satisfactorily completed all the work required under the subcontract. This alone would be sufficient to sustain the court's conclusions resolving this issue against Massman.

The record in these appeals is inordinately and unnecessarily long and complicated. It is a maze and mass of conflicting evidence, in question and answer form. The trial court did an inordinate amount of work in scanning this record and resolving the conflicts in the testimony, and in making detailed findings of fact and conclusions of law. It is perhaps too much to expect that in the construction of a project of such magnitude some errors and miscalculations did not occur. It may also be possible that absolute accuracy may not have been reached by the trial court. That would be too much to expect in this labyrinth of mystification and confusion.

We find no reversible error in the record, and the judgment of the trial court is accordingly affirmed.