# WELLS BROTHERS COMPANY OF NEW YORK *v.* UNITED STATES.

## APPEAL FROM THE COURT OF CLAIMS.

No. 75.   Submitted April 30, 1920.—Decided November 8, 1920.

Where a contract for the construction of a public building, giving the United States a broad power to suspend operations where necessary in the opinion of its architects for the purpose or advantage of the work, permitted the United States to make changes of materials, and, besides providing against claims for damages on account of such changes, declared generally that no claim should be made or allowed to the contractor for any damages arising out of any delay caused by the United States, *held*, that a delay ordered to await an appropriation by Congress for substituted materials and another in anticipation of the passage of a postal law because of which the plans were altered, would not support claims for damages under the contract. P. 85.

54 Ct. Clms. 206, affirmed.

THE case is stated in the opinion.

*Mr. Abram R. Serven* and *Mr. Burt E. Barlow* for appellant.

*Mr. Assistant Attorney General Davis* for the United States. *Mr. Jno. W. Trainer* was also on the brief.

MR. JUSTICE CLARKE delivered the opinion of the court.

This is an appeal from a judgment of the Court of Claims, sustaining a general demurrer to and dismissing the amended petition.

The allegations of this amended petition, admitted by the demurrer and essential to be considered, are:

The appellant, a corporation organized under the laws of New York, and engaged in the general building and construction business, entered into a written contract with the United States for the construction of a post office and court house building in New Orleans, dated September 30, 1909, for which it was to be paid $817,000, but its bond for performance was not approved until nine days later, on October 9; on the day after the contract was signed the United States "ordered and directed" appellant to delay ordering limestone (as specified in the contract) for the exterior of the street fronts of the building "for the reason, as stated, that a change was contemplated in said exterior face stonework which would require an additional appropriation by Congress"; the appellant assented to a delay of two weeks only, but, although protesting that further delay would result in its damage, it refrained from purchasing limestone until August 19, 1910, when, the required appropriation by Congress having been obtained, a supplemental agreement was entered into by the parties to the contract by which marble was substituted for limestone for the street fronts of the building, the compensation of the appellant was increased $210,500, and the time for completion of the building was extended from April 1, 1911, to February 5, 1912; during this delay the contractor proceeded with other work under the contract and prior to August 19, 1910, it had completed all the required excavation, foundation and structural steel work; after the "modification and addition of August 19, 1910, to the contract work" the appellant so proceeded with the performance of the contract that by February 1st, 1912, the building was substantially completed except the interior partitions, and thereupon the United States, again over the protest of appellant, "ordered and directed" a delay, which continued to Au-

gust 24, 1912, until congressional legislation was obtained authorizing the Parcel Post, whereupon the plans for the interior arrangements of the building were adapted to that service and the building was completed.

The claim is wholly for damages occasioned by the two delays thus described and the question for decision is, whether the terms of the contract authorized the Government to require such delays without becoming liable to the contractor for damages which may have been caused to it thereby.

The contract involved contains this provision:

"It is further covenanted and agreed that the United States shall have the right of suspending the whole or any part of the work herein contracted to be done, whenever in the opinion of the architects of the building, or of the Supervising Architect, it may be necessary for the purpose or advantage of the work, and upon such occasion or occasions the contractor shall, without expense to the United States, properly cover over, secure, and protect such of the work as may be liable to sustain injury from the weather, or otherwise, and for all such suspensions the contractor shall be allowed one day additional to the time herein stated for each and every day of such delay so caused in the completion of the work; the same to be ascertained by the Supervising Architect; and a similar allowance of extra time will be made for such other delays as the Supervising Architect may find to have been caused by the United States, provided that a written claim therefor is presented by the contractor within ten days of the occurrence of such delays; provided, further, that no claim shall be made or allowed to the contractor for any damages which may arise out of any delay caused by the United States."

The contract further declares that the contractor:

"Will make any omissions from, additions to, or changes in, the work or materials herein provided for whenever

required by said party of the first part; . . . and that no claim for damages, on account of such changes or for anticipated profits, shall be made or allowed."

It would be difficult to select language giving larger discretion to the United States to suspend the performance of the "whole or any part of the work" contracted for, or to change the work or materials, than that here used. The provision for the protection of the work shows that long interruptions were contemplated with a compensating extension of time for performance provided for, and it is admitted that, eight days before its bond was approved and it became bound, the appellant received its first order to delay, for the reason that "a change was contemplated in said exterior face stonework which would require an additional appropriation by Congress."

Such a delay as was thus ordered was certain to be an infidenite and very probably a long-continued one, but the appellant, experienced contractor that it was, did not hesitate to submit to it by permitting the approval of its bond, which rendered its obligation under the contract complete, more than a week after notice had been received of the order. Thus, with much the longest delay complained of ordered and actually entered upon, the appellant consented to be bound by the language quoted, which vested such comprehensive discretion over the work in the Government. That this confidence of the contractor was not misplaced is shown by the fact that this first delay resulted in the substitution of marble for limestone for the street fronts of the building and in a supplemental agreement by which it received additional payments, aggregating $210,500, and an extension of ten months for the completion of the work.

In addition to all this it must be noted that the first paragraph, above quoted, concludes with this independent proviso:

"Provided, further, that *no claim shall be made or allowed*

*to the contractor* for any damages which may arise out of any delay caused by the United States."

Here is a plain and unrestricted covenant on the part of the contractor, comprehensive as words can make it, that it will not make any claim against the Government "for *any damages* which may arise out of *any delay* caused by the United States" in the performance of the contract, and this is emphasized by being immediately coupled with a declaration by the Government that if such a claim should be made it would not be allowed.

Such language, disassociated as it is from provisions relating to "omissions from," the making of "additions to, or changes in," the work to be done, or "materials" to be used, can not be treated as meaningless and futile and read out of the contract. Given its plain meaning it is fatal to the appellant's claim.

Men who take million-dollar contracts for Government buildings are neither unsophisticated nor careless. Inexperience and inattention are more likely to be found in other parties to such contracts than the contractors, and the presumption is obvious and strong that the men signing such a contract as we have here protected themselves against such delays as are complained of by the higher price exacted for the work.

We are dealing with a written contract, plain and comprehensive in its terms, and the case is clearly ruled in principle by *Day* v. *United States*, 245 U. S. 159, 161; *Carnegie Steel Co.* v. *United States*, 240 U. S. 156, 164, 165; *Dermott* v. *Jones*, 2 Wall. 1, 7, and *Chouteau* v. *United States*, 95 U. S. 61, 67, 68. The judgment of the Court of Claims dismissing the petition must be

*Affirmed.*