**ANTHONY P. MILLER, INC., a New Jersey Corporation, Plaintiff,**

v.

**WILMINGTON HOUSING AUTHORITY, a Public Authority of the State of Delaware, Defendant.**

**Civ. A. No. 1739.**

United States District Court
D. Delaware.
Aug. 8, 1958.

Clair J. Killoran and John Van Brunt, Jr., Wilmington, Del., for plaintiff.

Thomas Herlihy, Jr., and Morris Cohen, Wilmington, Del., for defendant.

LAYTON, District Judge.

The matter in dispute here arises out of a written contract for the construction by the plaintiff of two extensive low rent housing developments, known as Southbridge Extension and Eastlake Extension.

Under the provisions of 31 Del.C. § 4317, the Wilmington Housing Authority advertised for bids. Paragraph 15 of the instructions to bidders contained the following clause:

"a. The Contracts will be awarded to the responsible bidders submitting the lowest proposal complying with the conditions of the Invitation for Bids, providing his bid is reasonable and it is to the interest of the Local Authority to accept it. * * * The Local Authority, however, reserves the right to reject any and all bids and to waive any informality in bids received whenever such rejection or waiver is in the interest of the Local Authority."

The bids for both the Southbridge Extension and Eastlake Extension were opened on March 12, 1952. Plaintiff was found to be the lowest bidder on the general construction with a price of $1,735,000. James Julian was found to be the lowest bidder for the demolition, site work and utilities, with a price of $136,736.75. Between the time of the opening of the bids and the awarding of the contract, the Commissioners of the Wilmington Housing Authority received protests from representatives of organized union labor of New Castle County against the award of a contract to this plaintiff, one of the reasons being that although it was a union contractor in its home town in New Jersey, experience had shown that it had operated an open, or non-union, shop on jobs in this county. On March 24, 1957, the Authority awarded the general construction contracts to the plaintiff, and the contracts for demolition, site work and utilities to James Julian.

The following provisions of the contract are important and appear in both the Southbridge Extension and Eastlake Extension contracts.

"5. Other Contracts

"The Local Authority may award other contracts for additional work, and the Contractor shall fully cooperate with such other contractors and carefully fit his own work to that provided under other contracts as may be directed by the Local Authority. The Contractor shall not commit or permit any act which will interfere with the performance of work by any other contractor.

"Where more than one prime contractor is employed on the site it shall be the responsibility of the *Local Authority to coordinate the work* of all such prime contractors unless otherwise expressly provided herein." (My emphasis)

\* \* \* \* \*

"13. Delays—Damages

"a. \* \* \* *Provided,* That the right of the Contractor to proceed shall not be terminated or the Contractor charged with liquidated damages because of any delays in the completion of the work due to unforeseeable causes beyond the control and without the fault or negligence of the Contractor, including but not restricted to acts of God, or of the public enemy, acts of the Government, *acts of the Local Authority*, acts of another contractor in the performance of a contract with the Local Authority, fires, floods, epidemics, quarantine restrictions, *strikes*, freight embargoes, and unusually severe weather or delays of subcontractors due to such causes, if the Contractor shall within 10 days from the beginning of any such delay (unless the Local Authority, with the approval of the PHA, shall grant a further period of time prior to the date of final settlement of the Contract) notify the Contracting Officer in writing of the causes of delay, who shall ascertain the facts and the extent of delay, and the Local Authority shall, subject to prior approval of the PHA, extend the time for completing the work when in its judgment the findings of fact of the Contracting Officer justify such an extension, and his findings of fact thereon shall be final and conclusive upon the parties hereto. (My emphasis)

"b. No payment or compensation of any kind shall be made to the Contractor for damages because of hindrance or delay from any cause in the progress of the work, whether such hindrances or delays be avoidable or unavoidable."

\* \* \* \* \* \*

"20. Requests for Supplementary Information

"a. It shall be the responsibility of the Contractor to make timely requests of the Architect, through the Local Authority, for such large scale and full size drawings, color schemes, and other additional information, not already in his pos-

session, which he will require in the planning and production of the work. Such requests may be submitted from time to time as the need is approached, but each such request shall be filed in ample time to permit appropriate action to be taken by all parties involved so as to avoid delay. Each request shall be in writing, and shall list the various items and the latest date by which each will be required by the Contractor. The first list shall be submitted within two weeks after Contract award and shall be as complete as possible at that time. The Contractor shall, if requested, furnish promptly any assistance and information which the Architect may require in responding to the requests of the Contractor. The Contractor shall be fully responsible for any delay in his work or to others arising from his failure to comply fully with the provisions of this Section.

"b. The Local Authority shall coordinate these activities between its Architect and the Contractor and shall expedite the flow of information so as to minimize delay in the progress of the development."

A brief reference to the pleadings is necessary. The complaint contains five causes of action; the first cause is not challenged by this motion.

The second cause of action deals exclusively with the contract for Eastlake Extension, alleging that defendant breached its contract in the following ways:

1. Defendant breached its covenant to coordinate the work of all prime contractors on the Eastlake Extension project, in that:

a. Defendant knew that non-union and union laborers could not work side by side on building projects in New Castle County without labor disturbances.

b. Defendant awarded a prime contract to James Julian, a non-union contractor, on the Eastlake Extension project which was to be performed concurrently with plaintiff's prime contract on the same project.

c. As a result, a strike of plaintiff's and its subcontractors' union laborers occurred on the Eastlake Extension project and lasted for a period of 54 days. Plaintiff suffered damage consisting of increased overhead costs, increased labor costs, increased labor and material costs of its subcontractors, and clean up and maintenance work. The amount claimed is $261,797.11.

2. Defendant breached its contract as to Eastlake Extension in that:

a. It failed to maintain an authorized and responsible representative at the project site.

b. It failed to make and delayed in making decisions when questions arose involving the owner's rights and responsibilities with regard to the performance of the work.

c. It unreasonably delayed approval of subcontractors, materials and shop drawings.

d. It unreasonably delayed action on change orders and directions to proceed.

e. It failed to coordinate the work of its prime contractors. Plaintiff claims as damages the incurring of increased costs for labor, materials and overhead in the amount of $32,704.27.

3. Defendant breached the contract by failing, refusing and delaying the payments due under the contract to the plaintiff resulting in damage to plaintiff in the amount of $8,692.70, representing interest paid by plaintiff on working capital.

The third cause of action is similar to the above, but relates to Southbridge. As to the fourth and fifth cause of action, both rely upon the same facts as alleged in the second and third cause, but the claims are stated in tort, rather than contract.

Defendant has moved for partial summary judgment, contending that certain of plaintiff's alleged damages may not be recovered as a matter of law. These damages, according to the defendant, are divided into two categories. The first grow out of the claims based upon the award of the contract to James Julian to be performed concurrently with plaintiff's contract. The second comprises those damages suffered by plaintiff because of delay in performance, allegedly caused by the defendant's failure to maintain an authorized and responsible representative at the project site, failure and delay in making decisions, delay in approvals of subcontractors, materials and shop drawings, unreasonably delayed action on change orders, and failure to make payments when due.

■ The first point for consideration is whether the award by a municipality of a public works contract to a non-union employer to be performed concurrently with a contract awarded to a union employer on the same project entitles the latter to damages when a strike results on the part of the union employees resulting in delaying performance by the union employer.

Plaintiff's theory of recovery in contract is that a provision of the general construction contract obligates the defendant to coordinate the work of all prime contractors; that the defendant knew that union and non-union labor could not work side by side in this area without disputes; and that the defendant breached its obligation by awarding two prime contracts to be concurrently performed side by side, one to a union, and the other to a non-union, employer. The theory of recovery in tort is that defendant knew that union and non-union labor could not work side by side on a building project in this area without disputes; that in view of the probability of such disputes it was defendant's duty not to award a contract to a non-union employer to be performed side by side with a union employer; and, thus, the award by the defendant breached its duty.

The premise of plaintiff's action on either theory is that under all the circumstances here, defendant was duty bound not to award a contract to a non-union employer to be performed concurrently with an employer of union labor. A moment's reflection will disclose the impossible situation which would be created if plaintiff's argument were sustained. Each time public contracts were let to union and non-union employers for work to be done at the same time and on the same location, the contractee would be open to a suit by either contractor for damages flowing from delays due to any wild-cat strike which might occur—a strike wholly beyond the contractee's control. What, then, is the contractee to do? "Award all contracts of such nature to employers of union labor", argues the plaintiff, "and thereby create an unlawful monopoly", replies the contractee.

Add to this the facts (1) that plaintiff's reputation as a contractor is that of a union employer in his home area (Atlantic City, N. J.) and a non-union employer when he does jobs here,[1] (2) that representatives of unions in this area protested the award of this contract to this very plaintiff, (3) that the plaintiff was well aware when he submitted his bid that the other prime contract might be awarded to a non-union employer, (4) the delay and damage were caused, not by the defendant or Julian, the non-union employer, but by his own men and (5) an award by the City of the Julian contract to the next lowest union bidder, as plaintiff contends should have been done, would have cost the defendant (in other words, the taxpayers) an additional $93,000, and it results altogether in a peculiarly unappealing argument.

Not only this, but had the defendant refused to award the so-called Julian contract to any but a union employer, it would have jumped from the frying pan into the fire for, by the clear weight of authority, a municipal corporation can-

1. Undenied affidavit of Finch.

not discriminate in favor of organized labor. As said by the Supreme Court of Maryland in Mugford v. Mayor and City Council of Baltimore, 185 Md. 266, 44 A. 2d 745, 747, 162 A.L.R. 1101:

"It has been frequently held that a municipality, in performing work or other duties it is required by law to do, cannot discriminate in favor of members of a labor union. Such action would not only be unlawful but would also tend to constitute a monopoly of public service by members of a labor union, which the law does not countenance."

On this same point, Teller on Labor Disputes and Collective Bargaining, Volume 1, Section 171, page 516, succinctly states:

"Government exists for the benefit of all, all are required to pay for the support of government, and finally government has a responsibility to all of its inhabitants alike. These appear to be the three main reasons assigned by the cases for almost uniformly holding invalid, statutes directing the employment of union labor in connection with public work contracts."

Perhaps the clearest pronouncement on this question is that of the Supreme Court of Ohio in State ex rel. United Dist. Heating v. State Office Building Commission, 124 Ohio St. 413, 179 N.E. 138, 80 A.L.R. 1376; 125 Ohio St. 301, 181 N.E. 129, where it was said:

"The clear issue of law in this case—and it is the only issue in this case—is whether a public contract may be denied to the lowest bidder upon the sole ground that he employs only union labor, or upon the sole ground that he does not employ exclusively union labor. If an award of a public contract can be denied upon the latter ground, it could for the same reason be denied upon the former. Can our public officers permit such discrimination? Courts without exception announce the rule that no such discrimination can be made.

\* \* \* \* \* \*

"The claim is made that costly delays and added expenses may occur because of possible trouble if this contract be not awarded to the bidder employing union labor. This claim assumes that a great state cannot control its laws requiring public bidding; cannot protect its citizens from unconstitutional discrimination. If such discrimination be permitted, all the laws controlling public bidding and requiring awards to be made to the lowest bidder have no potency. The state would be helpless."

The sole reason for plaintiff's objection to the award of the other prime contract to Julian was that he is a non-union employer. A refusal by the defendant to award the contract to him for this reason alone would clearly violate the public policy. On this phase of the case, the plaintiff's position, both in fact and in law, seems to me to be devoid of merit, and summary judgment will be awarded against it insofar as concerns alleged damages caused by the strike.

Certain other damages are claimed as a result of delays allegedly caused by the defendant.[2] The defendant takes the position that they are not recoverable because of the following provision of the Contract:

"b. No payment or compensation of any kind shall be made to the Contractor for damages because of hindrance or delay from any cause in the progress of the work, whether such hindrances or delays be avoidable or unavoidable."

The language is very plain. Nor is it unusual to incorporate a so-called "no damage" clause in contracts involving

2. I am assuming that these claims differ from those comprising the first group of damages.

public works. In this connection, the New Jersey Superior Court stated in A. Kaplen & Son, Ltd., v. Housing Authority, 42 N.J.Super. 230, 126 A.2d 13, 15:

"Stipulations like the questioned proviso are obviously conceived in the public interest in protecting public agencies contracting for large improvements on the basis of fixed appropriations or loan commitments against vexatious litigation based on claims, real or fancied, that the agency has been responsible for unreasonable delays. * * * Exculpatory clauses of the kind here involved have long been in vogue and have been generally sustained and enforced in the courts."

And the Supreme Court of Rhode Island in a case involving an almost identical provision said:

"The contractor in effect argues that the clause under consideration means that the Authority is excusable for reasonable delay only. This construction of the no damage clause would subject the Authority to the inquiry in all instances of delay whether a reasonable person would have acted differently, thus raising the very question that the clause intended to avoid. In the absence of any claim of concealment, misrepresentation, or fraud, the contractor by such construction of the no damage clause cannot render meaningless an express condition of the contract which it knowingly and freely accepted." Psaty & Fuhrman, Inc., v. Housing Authority of Providence, 76 R.I. 87, 68 A.2d 32, 35, 10 A.L.R.2d 789.

See also Walter R. Cliffe Co. v. DuPont Engineering Co., D.C.Del., 298 F. 649; Christhilf v. Mayor and City Council of Baltimore, 152 Md. 204, 136 A. 527; Charles I. Hosmer, Inc., v. Commonwealth, 302 Mass. 495, 19 N.E.2d 800; Note A.L.R.2d 801 et seq.

Certain exceptions to the general rule under circumstances not here present have been recognized: for example, where the delay was of a kind not contemplated by the parties, Sheehan v. City of Pittsburgh, 213 Pa. 133, 62 A. 642; where the delay amounted to an abandonment of the contract, Wells & Newton Company of New York v. Craig, 232 N.Y. 125, 133 N.E. 419 and where the delay was caused by bad faith, American Bridge Company v. State of New York, 245 App.Div. 535, 283 N.Y.S. 577. Clearly distinguishable are the following cases cited by the plaintiff: Pitt Const. Co. v. City of Dayton, 6 Cir., 237 F. 205; Northeast Clackamas C. E. Co-Op. v. Continental Gas Co., 9 Cir., 221 F.2d 329 and Arkansas Bridge Co. v. Kelly-Atkinson Const. Co., 8 Cir., 282 F. 802. Concededly, other cases will be found arriving at a result different from the general rule. Compare De Riso Bros. v. State, 161 Misc. 934, 293 N.Y.S. 436. But in the main, the authorities are uniform in holding that, in the absence of the exceptions just enumerated, the "no damage" clause is operative. Accordingly, summary judgment is granted in so far as plaintiff's claim is grounded upon breach of contract.

But in the alternative, the plaintiff claims in tort for the recovery of these same damages. More specifically, it is charged that the defendant breached paragraph five [3] of the Contract by (1) failing to maintain a responsible representative at the project site, (2) by failure and delay in making decisions, (3) by delay in approving subcontractors' materials and shop drawings, (4) by unreasonably delaying action on change orders and (5) by failure to make payments when due. In these five respects it is claimed that the defendant "unlawfully, tortiously, negligently and carelessly" interfered with the plaintiff's contractual relationship with others whereby damages were incurred.[4] This

3. " * * * it shall be the responsibility of the local authority to coordinate the work of all such prime contractors * * *."

4. These same five causes are assigned as reasons for the delay in the Count for breach of contract.

requires more extended comment much of which is equally applicable to the contract phase of the action just discussed. An analysis of the charging portions of the Complaint dealing with tort reveals that in no respect is the defendant accused of bad faith, fraud or acting with evil intent. At best, the allegations of negligence are bottomed upon actions which may be characterized as inaction, lack of diligence or lack of effort, something akin to simple negligence or carelessness. Assuming such conduct, arguendo, is this sufficient to create an exception to the "no damage" clause in this case?

Psaty & Fuhrman v. Housing Authority, supra, in a soundly reasoned opinion, concludes that it is not. The opinion of the Court in part is as follows:

"[1] The contractor apparently realizes that the no damage clause is of serious import and therefore seeks to minimize its force and effect by giving it practically no meaning. Although it refers to that clause, it argues its contention in connection therewith as if it were nonexistent. No useful purpose will be served by the contractor's reliance in the circumstances on general propositions of law which, conceding their soundness in the ordinary case, do not control the fundamental question at issue here. There is no doubt that ordinarily if one exacts a promise from another to perform an act the law implies a counter promise against arbitrary or unreasonable conduct on the part of the promisee. The following cases, among others, upon which the contractor relies plainly and properly support such view: Marcaccio, Inc., v. Santurri, 51 R.I. 440, 155 A. 571; Danforth & Armstrong v. Tennessee & Coosa R. Co., 93 Ala. 614, 11 So. 60; People ex rel. Wells & Newton Co. v. Craig, 232 N.Y. 125, 133 N.E. 419; Rogers v. United States, 99 Ct.Cl. 393. But these cases are clearly distinguishable in their facts from the instant cases.

"The no damage clause in this contract expressly states that the contractor shall not recover damages because of hindrance or delay from any cause in the progress of the work 'whether such delays be avoidable or unavoidable.' The language of this provision, though broad in scope, is not ambiguous. As the contract provides for an extension of time if requested by the contractor, it is obvious that the object of the clause was to protect the Authority in an undertaking of such magnitude against the vexatious question, in perhaps innumerable instances, whether any particular delay could have been reasonably avoided by the Authority. *Had there been no such provision in the contract, the Authority would have been liable on the principle of an implied covenant if unreasonable delay were proven, that is, delay that might reasonably have been avoided in carrying out its part of the contract.*[5] Most of the cases upon which the contractor relies to support its contention that the superior court erred in sustaining the demurrer to counts 3, 4 and 5 of the declaration proceed on this principle. Illustrative of those cases are the following: United States v. Peck, 102 U.S. 64, 26 L.Ed. 46; Danforth & Armstrong v. Tennessee & Coosa R. R., supra; McFarland v. Welch, 48 Mont. 196, 136 P. 394; Patterson v. Meyerhofer, 204 N.Y. 96, 97 N.E. 472. (My emphasis.)

"[2–4] The contractor in effect argues that the clause under consideration means that the Authority is excusable for reasonable delay only. This construction of the no damage clause would subject the Authority to the inquiry in all in-

---

5. There was a somewhat similar provision in paragraph 13 of the Contract in this case elsewhere quoted. In fact, the plaintiff applied for and was granted a period of 54 extra days to compensate for the time lost from the strike.

stances of delay whether a reasonable person would have acted differently, thus raising the very question that the clause intended to avoid. In the absence of any claim of concealment, misrepresentation, or fraud, the contractor by such construction of the no damage clause cannot render meaningless an express condition of the contract which it knowingly and freely accepted. As was observed by the supreme court in Wells Bros. Co. v. United States, 254 U.S. 83, at page 87, 41 S.Ct. 34, at page 35, 65 L.Ed. 148: 'Men who take million-dollar contracts for government buildings are neither unsophisticated nor careless.' "

Moreover, I think that the plaintiff's reliance upon II Restatement of Contracts, Sec. 575 is misplaced.[6] While the language of the Restatement, standing alone, would seem to exempt acts of ordinary negligence from the operation of a no damage clause, yet, so to construe it would result in placing the Restatement in flat opposition to a strong line of well reasoned opinions including, in addition to those already mentioned, Wells Bros. v. United States, 254 U.S. 83, 41 S.Ct. 34, 65 L.Ed. 148; Ericksen v. Edmonds School Dist., 13 Wash.2d 398, 125 P.2d 275 and City of Orlando v. Murphy, 5 Cir., 84 F.2d 531. For this reason, I am of the view that the Restatement did not intend to include situations such as this where, in consideration of the right to an extension of time for delays not his fault, the Contractor, in turn, exempts the Contractee from liability for all delays regardless of fault. It is my conclusion, then, that under a "no damage" clause such as here under consideration, acts of omission or commission amounting to simple negligence do not furnish grounds for an action for damages for delays.

Now, applying these principles to the relevant allegations of the complaint, it has already been noted that none of the five alleged reasons for the delay seems to imply acts of bad faith. But the words "tortiously" and "unlawfully" may include acts done in fraud or bad faith. And it is not inconceivable that the plaintiff may be able to prove that one or more of the five causes of the alleged delay was inspired by bad faith either express or to be implied by a line of conduct. Accordingly, at this state of the proceeding, I decline to grant the defendant's motion for summary judgment on this final ground. However, unless the plaintiff at trial is able to adduce proof indicating that the delays charged in the complaint were the product of fraud, evil intent, improper motive or wilfulness amounting to bad faith, its case cannot survive a motion for directed verdict.

An order will be entered granting the motion in part and denying the motion in part.

---

6. "§ 575. * * *
"(1) A bargain for exemption from liability for the consequences of a wilful breach of duty is illegal, and a bargain for exemption from liability for the consequences of negligence is illegal it
* * * * *

"(b) One of the parties is charged with the duty of public service, and the bargain relates to negligence in the performance of any part of its duty to the public, for which it has received or been promised compensation."