Sam A. SLOANE, doing business as Sam A. Sloane Construction Company, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 7029.

United States District Court
E. D. South Carolina,
Charleston Division.

Aug. 19, 1961.

William H. Grimball, Jr., Charleston, S. C., for plaintiff.

Thomas P. Simpson, Asst. U. S. Atty., Charleston, S. C., for defendant.

WYCHE, District Judge.

In this action plaintiff seeks damages for the negligent breach of a construction contract entered into with the defendant in the following particulars: (a) When the defendant became aware that it would be unable to receive delivery of the pontoons from the plaintiff, it failed to advise the plaintiff in sufficient time for him to change his schedule of construction accordingly; (b) Even though the defendant knew, or should have known, that it would be unable to receive delivery of the completed pontoons, it instructed the plaintiff to complete the construction of the pontoons as scheduled, and that it would receive and store the completed pontoons in the Charleston Navy Yard, and thereafter it failed and refused to receive the pontoons; (c) Even when the defendant knew, or should have known, that it would be unable to receive the completed pontoons, it instructed the plaintiff, by letter dated October 30, 1957, that the pontoons would be delivered at the job in "early spring, probably March." In point of fact, the defendant refused to receive delivery of the pontoons until June, 1958; (d) The defendant failed and refused to accept delivery of the said pontoons and completion of the said contract on or before May 1, 1958, the completion date of the contract as modified by Change "B".

This court has jurisdiction under the Tucker Act, 28 U.S.C.A. § 1346(a) (2).

The case was tried before me without a jury.

At the close of plaintiff's case the defendant moved for an involuntary dismissal. This motion was taken under advisement. The defendant then offered no testimony and renewed its motion for an involuntary dismissal.

In compliance with Rule 52(a), Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

Findings of Fact

The basic facts in this case are not in dispute.

The plaintiff, Sam A. Sloane, doing business as Sam A. Sloane Construction

Company, on February 20, 1957, entered into Contract NBy–4999 with the Department of the Navy for the construction and installation of three floating boat piers to be installed on site at the United States Naval Minecraft Base, Charleston, South Carolina. The contract was executed on Standard Form 23A and the price agreed upon for the work to be furnished was $260,437. These three floating piers were to be installed in spud pile bents which were to be constructed under a separate contract by Manu-Mine Research and Development Company.

The contract between plaintiff and defendant provided in Specification 1–23 that the plaintiff submit a schedule of construction and installation for approval before commencement of construction. By letter dated April 12, 1957, plaintiff furnished the following schedule of construction: "1—Poured concrete casting beds, carpentry shop, etc., complete by 15 April 1957. 2—Launching basin and canal from yard to Great Sound complete by 15 June 1957. 3—Build Pier and set up crane for launching by 1 July 1957. 4—Build launching ramp, access roads, etc., by 1 July 1957. 5—Form materials reinforcing and sleeves to arrive by 15 May 1957 and first cell form complete by June 1, 1957, nine forms to be built, balance complete by 1 July 1957. 6—Pour first cell no later than week of 18 June 1957, balance to be poured by 15 November 1957. All launched by 15 December 1957. 7—Install first pier October 1957, second December 1957 and third January 1958."

No objection to this work schedule was raised by the defendant but it retained the schedule and permitted plaintiff to proceed with the work on the basis of this schedule.

Specification 1–06 of the contract provided that the work be completed within 360 calendar days after the date of notice of award or other communication authorizing the plaintiff to proceed. The contract, as originally executed, provided for work to commence on February 25, 1957, and to be completed by February 20, 1958.

Specification 1–07 provided for liquidated damages of $100 per day for failure to complete the work within the time allowed.

Specification 1–25 provided that the actual construction of the pontoons and their assembly into piers could be performed at the Naval Base or elsewhere at the option of the plaintiff, but further provided that the final acceptance was to be conditioned on their installation within and connection to the spud piles at the Naval Base.

In view of the conditions existing at the Naval Base, the plaintiff, in preparing his bid, planned to construct the pontoons on a site owned by him. Plaintiff probably would have gotten the bid had he planned to construct them at the Naval Base because his price would have been much higher, as it was cheaper to build a basin on his property to do the work. In connection with their construction, plaintiff dredged a basin on his property on James Island which was large enough to accommodate three assembled pontoons and would have been sufficient to meet the needs of plaintiff under the work schedule submitted to the defendant.

The contract between the defendant and Manu-Mine Research and Development Company, which had been entered into on May 18, 1956, was declared in default by the defendant approximately March 30, 1957. A completion contract for the incompleted portion of the Manu-Mine contract was awarded to Tidewater Construction Company, Norfolk, Virginia, on April 15, 1957.

In a conversation with agents of the defendant during the early part of October, 1957, plaintiff advised that the spud pile bents were not ready for the installation of the pontoons and that he would not be able to deliver because the bents were not in place. By letter dated October 15, 1957, plaintiff advised defendant as follows: "Gentlemen: On April 12, 1957, we furnished you with a

letter covering schedule of construction. 'Item 7. Install first pier October 1957.' It is our understanding that the pile work has not been started, therefore, we will be unable to maintain our schedule. Please advise immediately as to your pleasure in this matter. It will be necessary for us to remove from our basin some of these units in order that we have room to complete the assembly of the balance. Yours truly, Sam A. Sloane Construction Co. Sam A. Sloane".

Thereafter, the plaintiff discussed the delay in the construction of the pile work verbally with the Resident Officer in Charge of Construction, and this officer advised the plaintiff to go forward with his work as scheduled, and that provisions would be made to receive and store the completed floating boat piers at the Naval Base.

By letter dated October 30, 1957, defendant advised plaintiff that the pontoons were not to be delivered to the job before early spring, probably March. By letter dated November 2, 1957, plaintiff advised defendant that, in order to continue work, it would be necessary to enlarge plaintiff's wet basin to accommodate all pontoons and further provide insurance coverage because of the added element of risk of having to wait to install the pontoons. Plaintiff further presented a cost breakdown for this additional expense in the amount of $6,600. This claim for additional expense was denied by letter dated May 9, 1958. The claim was then properly presented through administrative channels to the Armed Services Board of Contract Appeals where it was dismissed for lack of jurisdiction by order dated September 18, 1958.

In enlarging his wet basin and providing protection for the pontoons, plaintiff expended the total sum of $9,621.05.

Paragraph 3 of the general provisions of the contract provides in part: "The Contracting Officer may at any time, by a written order, and without notice to the sureties, make changes in the drawings and/or specifications of this contract and within the general scope thereof. If such changes cause an increase or decrease in the amount due under this contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accordingly."

Paragraph 5 of the general provisions of the contract provides as follows:

"(a) If the Contractor refuses or fails to prosecute the work, or any separable part thereof, with such diligence as will insure its completion within the time specified in this contract, or any extension thereof, or fails to complete said work within such time, the Government may, by written notice to the Contractor, terminate his right to proceed with the work or such part of the work as to which there has been delay. In such event the Government may take over the work and prosecute the same to completion, by contract or otherwise, and the Contractor and his sureties shall be liable to the Government for any excess cost occasioned the Government thereby, and for liquidated damages for delay, as fixed in the specifications or accompanying papers, until such reasonable time as may be required for the final completion of the work, or if liquidated damages are not so fixed, any actual damages occasioned by such delay. If the Contractor's right to proceed is so terminated, the Government may take possession of and utilize in completing the work such materials, appliances, and plant as may be on the site of the work and necessary therefor.

"(b) If the Government does not terminate the right of the Contractor to proceed, as provided in paragraph (a) hereof, the Contractor shall continue the work, in which event he and his sureties shall be liable to the Government, in the amount set forth in the specifications or accompanying papers, for fixed, agreed, and liquidated damages for each calendar day or delay until the work is completed or accepted, or if liquidated damages are not so fixed, any actual damages occasioned by such delay.

"(c) The right of the Contractor to proceed shall not be terminated, as provided in paragraph (a) hereof, nor the Contractor charged with liquidated or

actual damages, as provided in paragraph (b) hereof because of any delays in the completion of the work due to unforeseeable causes beyond the control and without the fault or negligence of the Contractor, including, but not restricted to, acts of God, or of the public enemy, acts of the Government, in either its sovereign or contractual capacity, acts of another contractor in the performance of a contract with the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather, or delays of subcontractors or suppliers due to such causes: *Provided,* That the Contractor shall within 10 days from the beginning of any such delay, unless the Contracting Officer shall grant a further period of time prior to the date of final settlement of the contract, notify the Contracting Officer in writing of the causes of delay. The Contracting Officer shall ascertain the facts and the extent of the delay and extend the time for completing the work when in his judgment the findings of fact justify such an extension, and his findings of fact thereon shall be final and conclusive on the parties hereto, subject only to appeal as provided in Clause 6 hereof."

During the course of construction, five change orders were executed by the parties. These change orders are numbered A through E, respectively, and change orders A, C, D and E call for a change in the manner of construction and provide for either an increase or decrease in the amount due under the contract. Change order B provided for an extension of 70 calendar days, making the contract completion date May 1, 1958, rather than February 20, 1958, and change order E also extended the completion date 334 calendar days, extending the completion date from May 1, 1958, to and including March 31, 1959.

Plaintiff was willing and able to perform his contract in compliance with the work schedule which was presented and was willing and able to perform his contract and deliver the pontoons on May 1, 1958. The pontoons were actually delivered on site and installed during the early part of June, 1958.

The reason for the delay was the unavailability of the spud pile bents to receive the floating pontoons. When it became apparent that Manu-Mine was not proceeding with its work, the defendant took steps under its contract to declare Manu-Mine in default and renegotiated the contract for spud pile bents with Tidewater Construction Company on April 15, 1957.

Before receiving final payment under the contract the plaintiff executed a Contractor's Release, dated March 25, 1959, in which he reserved his right to process and pursue his claim against the Government for $9,621.05, by lawsuit or otherwise. The defendant took no exception to this reservation and paid the plaintiff the balance due under the contract, with the exception of the amount of the disputed claims.

There is no evidence in the record of any negligent act or wilful misconduct on the part of the defendant that created the delay in the availability of the site which lead to plaintiff's damages. The undisputed basic facts do not make out a case of negligent breach of contract.

## Conclusions of Law

From the foregoing facts it is my opinion that the sole cause of the additional expenditure by the plaintiff was the unavailability of the site on the date contemplated by the parties when the contract was entered into.

Since this is an action for negligent breach of contract, the right of the plaintiff to recover depends upon the rights given to him under the contract. The courts in the past have had occasion to pass on similar provisions in government contracts and have held that the Government is not liable for a delay resulting from the mere failure to have the work site in proper condition for construction to proceed at a given time.

The Supreme Court in the case of United States v. Howard P. Foley Co., 329 U.S. 64, 67 S.Ct. 154, 91 L.Ed. 44, in

a factual situation similar to the facts in the case before me, said:

"The respondent, an electrical contractor, agreed for a fixed fee to supply the materials for and install a field lighting system at the National Airport, Gravelly Point, Virginia, then under construction. The agreement was embodied in a standard form Government contract. Respondent promised to complete the job within 120 days after notice to proceed. In fact the job was not finished until 277 days after notice was given. The delay came about in this way. The site of the airport was being built up from under water by a fast but then unique method of hydraulic dredging. As portions of the earth base for the runways and taxiways settled, they were to be paved and the shoulders 'rought-graded.' As segments of this work were finished, respondent was to move in, wire them, and install the lighting fixtures. The dredging took longer than Government engineers had anticipated, because some of the dredged soil, proving to be too unstable for runways and taxiways, had to be replaced. This in turn delayed completion of the runway sections; and, until each was finished, the lighting equipment for each segment could not be installed. The 157 days delay resulted from the consequently long and irregular intervals between the times when these segments were made available to respondent to do its job. But for these delays, respondent apparently could have finished its work in 120 days.

" * * * The pertinent provisions in the instant contract are, in every respect here material, substantially the same as those which were held in the former cases to impose no obligation on the Government to pay damages for delay. Here, as in the former cases, there are several contract provisions which showed that the parties not only anticipated that the Government might not finish its work as originally planned, but also provided in advance to protect the contractor from the consequences of such governmental delay, should it occur. The contract reserved a governmental right to make changes in the work which might cause interruption and delay, required respondent to coordinate his work with the other work being done on the site, and clearly contemplated that he would take up his work on the runway sections as they were intermittently completed and paved. Article 9 of the contract, entitled 'Delays—Damages,' set out a procedure to govern both parties in case of respondent's delay in completion, whether such delay was caused by respondent, the Government, or other causes. If delay were caused by respondent, the Government could terminate the contract, take over the work, and hold respondent and its sureties liable. Or, in the alternative, the Government could collect liquidated damages. If, on the other hand, delay were due to 'acts of the government' or other specified events, including 'unforeseeable causes,' procedure was outlined for extending the time in which respondent was required to complete its contract, and relieving him from the penalties of contract termination or liquidated damages."

In the earlier case of United States v. Rice, 317 U.S. 61, 63 S.Ct. 120, 121, 87 L.Ed. 53, the Supreme Court also passed on a similar contract, and decided that:

"Respondent agreed to install plumbing, heating, and electrical equipment in a Veterans' Home to be erected at Togus, Maine, while another contractor was to do the general work of preparing the site and constructing the building. Respondent agreed, for a stipulated price, to begin work upon notice to proceed and to finish by the time the work had been completed by the principal contractor. If respondent failed to complete the work within the time thus set, the Government was entitled to terminate the contract or to require the payment of liquidated damages. The length of time allowed the principal contractor under his contract, subject to certain qualifications discussed below, was 250 days, and it was into this schedule that respondent was to coordinate its own activity.

"The Government gave notice to the general contractor to begin work on May 9, 1932. On May 12, respondent was

notified to begin; and early in June its superintendent arrived in Maine with tools and equipment. Upon his arrival he found that the general contractor had been stopped by the Government because of the unexpected discovery of an unsuitable soil condition. It became necessary to change the site of the building and to alter the specifications, and, because of the delay attendant upon preparing a new foundation, respondent was unable to begin work until October. As a consequence, overhead expenses accumulated during the period of delay, and much of the work which respondent's employees otherwise would have done either during warm weather or after the building was enclosed, was done outside in cold weather.

"Because of the delay and pursuant to the adjustment clauses of the contract, the government extended the time of performance by respondent; and, because of structural changes, it re-adjusted the amount due. \* \* \*

\* \* \* \* \* \*

"The chief issues of the case are whether the delay in commencing the construction was a breach of contract by the government; whether, regardless of the answer to that question, respondent was entitled to an equitable adjustment for damages resulting from the delay, in addition to the extension of time already granted; and whether respondent is barred from any recovery because it failed to appeal certain decisions affecting its contract to the chief officer of the department. Under the view we take of the first two of these questions, it is unnecessary to answer the third.

"I. The Government contends, as it did in the Crook case [H. E. Crook Co., Inc. v. United States, 270 U.S. 4, 46 S.Ct. 184, 70 L.Ed. 438], supra, that the change in specifications resulting in delay was not a breach of the contract, but in accordance with its terms; that the extent of its obligation for permitted changes was fixed by the contract; and that for delay the Government was required to do no more than grant an extension of time. Put another way, the Government concedes that if an alteration of plan required respondent to use an extra 50 tons of steel, the Government would be liable for the value of the steel and the cost of installation; but it argues that under the terms of this contract an extension of time should be accepted as full equitable adjustment for all damages caused by the fact that the work was done at the later period made necessary by the permitted change. Essentially it repeats the doctrine of Chouteau v. United States, 95 U.S. 61, 68, 24 L.Ed. 371: 'For the reasonable cost and expenses of the changes made in the construction, payment was to be made; but for any increase in the cost of the work not changed, no provision was made.'

"We agree with this view. We do not think the terms of the contract bound the government to have the contemplated structure ready for respondent at a fixed time. Provisions of the contract showed that the dates were tentative and subject to modification by the government. The contractor was absolved from payment of prescribed liquidated damages for delay, if it resulted from a number of causes, including 'acts of Government' and 'unusually severe weather.' The government reserved the right to make changes which might interrupt the work, and even to suspend any portion of the construction if it were deemed necessary. Respondent was required to adjust its work to that of the general contractor, so that delay by the general contractor would necessarily delay respondent's work. Under these circumstances it seems appropriate to repeat what was said in the Crook case, that 'When such a situation was displayed by the contract it was not to be expected that the Government should bind itself to a fixed time for the work to come to an end, and there is not a word in the instrument by which it did so, unless an undertaking contrary to what seems to us the implication is implied.' [H. E.] Crook Co., [Inc.] v. United States, supra [270 U.S.] 6 [46 S.Ct. 184, 70 L.Ed. 438]. Decisions of this Court prior to the Crook case also make it clear that contracts such as this do not bind the Government to have the property ready for work by a contractor

at a particular time. Wells Bros. Co. [of New York] v. United States, 254 U.S. 83, 86 [41 S.Ct. 34, 65 L.Ed. 148]; Chouteau v. United States, supra; cf. United States v. Smith, 94 U.S. 214, 217, 24 L.Ed. 115."

The factual situation in the case of Peter Kiewit Sons' Co. v. United States, 151 F.Supp. 726, 138 Ct.Cl. 668, relied upon by plaintiff is distinguishable from the present case. There, although a similar contract was involved, the Government was required to furnish certain material as a part of the contract, and without it, the contract could not be completed. The Court found as a fact that when the Government gave notice to the contractor to proceed, it had knowledge that the materials which it was to furnish were in short supply. The Court further found that not only did the Government not make this information available to the contractor, but in fact placed an order with an earlier delivery date for the same material with the supplier and by this affirmative act caused the contractor to be delayed. In the present case, the evidence is to the contrary in that the Government was not responsible for the furnishing of any materials and the cause of the delay and resulting damages to the plaintiff was the failure of another contractor to have the site available. In this regard, the Government upon learning that Manu-Mine was not proceeding with its work re-negotiated the contract for the construction of the spud pile bents on April 15, 1957, which was some six months prior to the date set by plaintiff under his work schedule for the delivery of the first pontoon.

The Government was not guilty of any negligence or wilful misconduct in connection with this contract, and, therefore, the only remedy available to the plaintiff for the delay in construction was the extension of the delivery date. Having extended the date by change order E, the Government granted the maximum relief to the plaintiff.

I, therefore, must conclude that the undisputed facts do not establish a negligent breach of contract as a matter of law in this case.

#### Order

Based upon the foregoing Findings of Fact and Conclusions of Law,

It is, therefore, ordered, that judgment be entered for the defendant, and the parties to bear their respective costs.