**W. C. JAMES, INC., a Nevada corporation, Plaintiff-Appellant,**

**v.**

**PHILLIPS PETROLEUM COMPANY, a Delaware corporation, Defendant-Appellee.**

**No. 72–1871.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted July 9, 1973.

Decided Sept. 24, 1973.

David J. Clarke, of Clarke, Allison & Waggener, Denver, Colo. (Anthony F. Renzo, Denver, Colo., on the brief), for plaintiff-appellant.

John J. Mullins, Jr., of Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., for defendant-appellee.

Before LEWIS, Chief Judge, and BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This action is by a contractor seeking additional compensation from Phillips

Petroleum Company for installing a gas pipeline in connection with a gathering system in an oil and gas field located in Campbell County, Wyoming. The plaintiff sought to recover over and above the contract amount the sum of $760,875.43 for amounts which it claims that it paid or incurred over and above the contract price. The district court, 347 F.Supp. 381, found for the defendant and entered judgment accordingly. In essence, its decision was that plaintiff had made a bad deal but was nevertheless bound by its contract.

This all started in May 1970 when Phillips invited contractors to submit bids on the construction of the mentioned pipeline system which was to collect natural gas from 32 existing wells and transport it to a larger pipeline. The work involved the preparation of the right-of-way, digging the ditches, stringing of the pipe, bending of the pipe, welding the joints together, taping the pipe and lowering it into the ditch followed by backfilling and cleanup. Also, meters were to be installed at each well to measure the gas flowing from that well into the pipeline.

Plaintiff won the bid by a rather narrow margin, there having been at least 12 bids submitted, and work commenced the last week in June 1970 following the signing of the contract on June 23, 1970. The invitation to bid sent out by Phillips stated that the system "will consist of approximately 178,600 lineal feet" of pipe. It also stated that the Company desired to complete the project by August 15, 1970. Submitted also with the Phillips letter was a map of the system showing the scheme for gathering the gas and showing the location of the approximately 178,600 feet of pipe which would be set down in an area seven by fourteen miles.

Mr. James, who with his wife is shown to have been the sole owner of the corporation James, Inc., was experienced in this kind of work, having performed a substantial amount of it. He had been engaged in it for some 20 years and had performed between one and two million dollars worth of work per year. Under the contract Phillips was to furnish rights-of-way, pipe and materials. Plaintiff-appellant agreed to commence the work on June 29, 1970 and to complete it not later than August 28, 1970. It was stated that time was of the essence, but there was a provision that plaintiff-appellant waived its rights to claim damages for delay of Phillips in furnishing materials or sites for the work.

The pipe commenced to arrive immediately after the signing of the contract and plaintiff undertook at once to prepare the right-of-way by digging the ditches. This was followed by the stringing and bending of the pipe; this started on July 16 and the welding phase commenced on July 27. Finally, the pipe was taped and lowered and the backfilling of the ditch started on July 29. This was followed by the cleanup. Meanwhile, however, plaintiff undertook to lay an additional 92,400 feet of pipe which adjoined the main system. A supplemental contract was dated July 31, 1970. In it appellant agreed to do the supplemental work at the same rate as the main contract.

The main factual problem about which plaintiff-appellant complains is that of delays in the making available of right-of-way and the furnishing of pipe. As a consequence, it is argued that the job was not completed until November 20, 1970. Meanwhile, plaintiff contends that he suffered great losses in keeping his crew on the job due to the geographic and other difficulties of reassembling them.

Plaintiff's contentions are that the trial court erred as follows:

1. In its failure to recognize that the installation of meter runs (to measure the quantity of gas at each well) was far more complex than was contemplated by the contract and that as a result the appellant incurred costs beyond the amount allocated for this work.

2. That the district court erred in dismissing appellant's claims for damages suffered as a result of delay by Phillips in providing rights-of-way, pipe and materials.

3. That the court erred in its refusal to disregard the express terms of the contract on the basis that it was an adhesive and unenforceable one, whereby plaintiff should be entitled to quantum meruit relief for material, equipment and labor above and beyond the so-called fine print provisions which inequitably favored Phillips.

The judgment of the trial court, Judge Winner presiding, rejected all of the plaintiff's claims and in effect held the plaintiff to its contract, concluding that there was no basis for the award of equitable relief. The trial court emphasized that in making its bid Mr. James, the principal owner of the James Company, relied on his experience together with so-called typical drawings tendered. He never went on the property and inspected it and had he done so, according to the Judge, he would have observed the high degree of complexity incident to the installation of the meter runs and would have observed other terrain problems. Instead, however, of carefully viewing the property and of carefully calculating the costs, James relied on his knowledge of the area and on his experience.

On the question of delays in furnishing rights-of-way and materials, the court noted that delays occasioned by this were minimal and were not caused by either willfulness or negligence of Phillips. It was also found that the delays were caused by the supplemental contract and extensions were granted in order to compensate for these. As to the plaintiff's contention with respect to the so-called "boiler plate" contract, the trial court carefully considered the Supreme Court's decisions in Overmyer Co. v. Frick Co., 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972) and Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L. Ed.2d 556 (1972). In the light of these cases the court held that the appellant was of sufficient size, even in relationship to Phillips, a major oil company, so that it could not seek relief on the "boiler plate" or "adhesion" theories.[1] The trial court also held that there was an accord and satisfaction after the final settlement of the contract by the parties and that the payment to appellant of the contract price plus the cost of the supplemental pipelaying plus the extras outside the contract provisions resulted in a waiver of any remaining right to demand additional compensation.

■■ Appellant would in effect have us retry the case by making an independent factual study in detail and in depth. This we cannot, of course, do.

1. On the issue of delay the trial court concluded:

It is true that James agreed to waive damage claims in event of delay in the furnishing of materials or right of way, but Phillips impliedly agreed to grant reasonable time extensions. We have pointed out that if delays were the result of Phillips' conscious wrong or negligence, in the words of Overmyer, other legal consequences might ensue. But it is not unusual for a contractor to accept risk of loss due to delays occasioned by normal business interruptions. Typically, contractors waive damage claims for delays due to weather, strikes, etc., and typically contracts provide that in event of such delays, a reasonable extension of time will be granted but damages cannot be claimed. The agreement here requires an extension of time when material or right of way shortages occur, and, although Phillips reserves the right to determine the length of time extension, were the length of the extension in issue, we would have no hesitancy in holding that a reasonable extension would have to be granted if material or right of way shortages were the cause of the delays, and we would hold that no right to act arbitrarily was contracted for by Phillips.

On balance, this case falls under the principles of Overmyer and James' waiver of a right to claim damages because of the material and right of way shortages was "voluntarily, intelligently and knowingly made." The contract is not overreaching; it is not a contract of adhesion. As has been said, it is enforceable according to its terms, and we have already found that Phillips has not breached it.

The trial court's decision in a factual case like that presented cannot and will not be disturbed on appeal if it is supported by evidence.[2] We are of the view that the trial court's findings are fully supported; therefore, we are not at liberty to relitigate the case and we must affirm.

Perhaps the crucial issue is whether plaintiff is entitled to recover as a result of delays by Phillips in furnishing pipe and rights-of-way. On this the contract provided that a contractor could not recover damages for any delay attributable to Phillips, but was entitled to an extension of the completion date as a result of such delays. It is the appellant's position that this "no damage" clause was unenforceable. We must disagree. Such clauses are commonly used in the construction industry and are generally recognized as valid and enforceable.[3]

The evidence does not disclose any fraud, bad faith, coercion or other inequitable conduct by Phillips in connection with this stipulation, and since this is the situation we find there is absolutely no basis for the plaintiff's claim.[4] The trial court's finding that Phillips acted with good faith and without fault in connection with the delays and, therefore, that there was no basis for setting aside this clause of the contract is proper and we are constrained to approve it. Moreover, we are in agreement with the trial court that the delays were relatively minor. Even the evidence on behalf of appellant showed that the job was not shut down due to lack of pipe or right-of-way. We also note that there was no contention by appellant during the performance of the contract that there had been a violation of it. Overall the conduct of the parties would strongly indicate that they were not at that time dissatisfied and that the present claim may have been afterthought.[5]

Finally, the evidence showed that appellant knew from its experience that there were to be some delays in acquiring rights-of-way in connection with the supplemental job. It would seem that although appellant demanded additional compensation in October, he nevertheless met with Phillips and agreed upon additional payments for extras. The sum of $404,124.57, which included $43,234.45, was paid. As noted, the trial court found that the parties intended to finally settle the matter and this was cited as an independent basis for the trial court's ruling. It is unnecessary to review the validity of this determination since we are of the opinion that the trial court's findings and judgment generally must be affirmed.

It is so ordered.

2. *See* Glens Falls Ins. Co. v. Newton Lumber & Mfg. Co., 388 F.2d 66, 70 (10th Cir. 1967); Carter Electric Company v. Travelers Indemnity Company, 382 F.2d 567, 573 (10th Cir. 1967); Saturn Oil and Gas Co. v. Northern Natural Gas Co., 359 F.2d 297, 303 (8th Cir. 1966); Southwestern Investment Co. v. Cactus Motor Co., 355 F.2d 674, 676 (10th Cir. 1966); McSorley's, Inc. v. United States, 323 F.2d 900, 902–903 (10th Cir. 1963).

3. *See* Wells Bros. v. United States, 254 U.S. 83, 41 S.Ct. 34, 65 L.Ed. 148 (1920). *See*

*also* F. D. Rich Co. v. Wilmington Housing Authority, 392 F.2d 841, 843 (3d Cir. 1968); 5 Corbin on Contracts § 1068 (1964); 13 Am.Jur.2d, Building and Construction Contracts, § 52 (1964).

4. *See* Justheim Petroleum Co. v. Hammond, 227 F.2d 629, 637 (10th Cir. 1955); Sammons-Robertson Co. v. Massman Const. Co., 156 F.2d 53 (10th Cir. 1946).

5. *Cf.* Hensel Phelps Const. Co. v. United States, 413 F.2d 701, 703 (10th Cir. 1969).