**JOHN E. GREEN PLUMBING AND HEATING COMPANY, INC.,**
Plaintiff-Appellant,

v.

**TURNER CONSTRUCTION COMPANY,**
Defendant-Appellee.

No. 83–1116.

United States Court of Appeals,
Sixth Circuit.

Argued June 7, 1984.

Decided Aug. 29, 1984.

Rehearing Denied Nov. 6, 1984.

Bruce L. Sendek, argued, C. William Garratt & Associates, Bloomfield Hills, Mich., for plaintiff-appellant.

William Wallace, argued, Thompson, Hine & Flory, Stephen F. Gladstone, Cleveland, Ohio, for defendant-appellee.

Before MARTIN and KRUPANSKY, Circuit Judges, and McRAE, Chief District Judge.[*]

BOYCE F. MARTIN, Jr., Circuit Judge.

In this diversity case, Green Plumbing and Heating appeals the district court's summary judgment and directed verdict in favor of Turner Construction Company. The main issues on appeal are the effect to be given a "no-damage-for-delay" clause in Green's construction contract with the City of Detroit and the adequacy of Green's proof of damages.

Green Plumbing was the plumbing and fire-sprinkler contractor for construction of the new Detroit General Hospital. Turner Construction was the construction manager for the project. As such, its duties included reviewing work schedules for the

---

[*] Honorable Robert M. McRae, Jr., Chief United States District Judge for the Western District of Tennessee, sitting by designation.

project to eliminate potential conflicts between the various contractors and conducting job-site meetings to resolve those conflicts which did arise despite all precautions. Green's contract with the City of Detroit Building Authority included a "no-damage-for-delay" clause.[1] This clause prevented Green from collecting damages for delay caused by anyone connected with the project, including Turner.

In carrying out its duties under its contract, Green claims to have encountered numerous problems caused by Turner's mismanagement of its oversight responsibilities: contractors were doing work out-of-sequence, no temporary heat was provided, and design changes took too long to be approved. Some of these problems, like the slow approval of design changes, simply caused a delay in the completion of Green's work. Other problems, like the lack of temporary heat and the out-of-sequence work, caused Green to employ more manpower resources to get the job done. As a result of these difficulties, Green claims to have lost a great deal of money.

In 1979, some three years after the project began, Green filed suit against Turner on two separate theories of liability: (1) Turner intentionally interfered with Green's contractual relationship with the City of Detroit; and (2) Turner negligently performed its construction management duties. The trial judge granted summary judgment in favor of Turner on the second count, see *John E. Green Plumbing & Heating Co. v. Turner Construction Co.,* 500 F.Supp. 910 (E.D.Mich.1981), ruling that the "no-damage-for-delay" clause prohibited all claims by Green against Turner

based on negligence.[2] At trial, he granted a directed verdict for Turner on the first count at the close of Green's evidence because Green failed to show that Turner acted with fraud, bad faith or malice towards Green. Green now appeals from both rulings.

No-damage-for-delay clauses "are commonly used in the construction industry and generally recognized as valid and enforceable." *W.C. James, Inc. v. Phillips Petroleum Co.,* 485 F.2d 22, 25 (10th Cir. 1973). *See also* 74 A.L.R.3d 187 (1976); 13 Am.Jur.2d, Building and Construction Contracts, § 52 (1964). However, because of their harsh effects, these clauses are to be strictly construed. *See, e.g., E.C. Ernst, Inc. v. Manhattan Construction Co. of Texas,* 551 F.2d 1026, 1029 (5th Cir.1977), *cert. denied,* 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978). In our case, the clause at issue forbids damages "should the Contractor be *delayed* in the commencement, prosecution, or completion" of the project. Green argues rather forcefully that this phrase, strictly construed, only bars *delay* damages and not other kinds of damages, such as damages for hindering work on the project. *Accord Lichter v. Mellon-Stuart Co.,* 305 F.2d 216, 218–19 (3d Cir.1962). Under this interpretation, delay means time lost where work cannot be performed because essential supplies have not been delivered or necessary preliminary work has not been performed. Delay damages, then, refers simply to the cost of an idle workforce.

We agree with Green. In this context, Green is not arguing that it suffered dam-

---

1. The relevant clause reads as follows:
   Should the Contractor [Green] be *delayed* in the commencement, prosecution or completion of the work by the act, omission, neglect or default of the Manager [Turner], Owner and/or anyone employed by the Manager, Owner or any other contractor or subcontractor on the Project, ... then the Contractor shall be entitled to an extension of time only, such extension to be for a period equivalent to the time lost by reason of any and all of the aforesaid causes ....
   (emphasis added).

2. The trial judge seemed to assume that a direct, contractual relationship between Green and Turner was not necessary to create a duty in Turner to Green. This assumption is correct. Turner's contract with the city of Detroit made Green a third-party beneficiary of that contract. Any failure on Turner's part to carry out its management duties under the contract would make it liable for Green's economic losses incurred in reliance upon adequate performance of those duties. *See Williams v. Polgar,* 391 Mich. 6, 215 N.W.2d 149 (1974).

ages from delay, but rather that it suffered damages from obstacles created by Turner.[3] And because at least a portion of Green's claimed damages related to extra manpower costs incurred as a result of Turner's hindrances—failure to properly coordinate work on the project and failure to ensure that temporary heat was provided—, it was error for the trial judge to grant summary judgment against Green on this issue.

We note that our reading of this clause is not inconsistent with results reached in other cases where "no-damage-for-delay" clauses were used to deny recovery. In many of those cases, the damages being sought were simply delay damages. Moreover, the clauses being construed often barred damages resulting from any delay or *hindrance*. *See, e.g., Chicago College of Osteopathic Medicine v. George A. Fuller Co.*, 719 F.2d 1335, 1339 (7th Cir. 1983) ("delayed . . . or obstructed or hindered"); *Peter Kiewit Sons Co. v. Iowa Southern Utilities Co.*, 355 F.Supp. 376, 383 (S.D. Iowa 1973) ("no claim . . . for hindrances or delays"); *Siefford v. Housing Authority*, 192 Neb. 643, 223 N.W.2d 816, 822 (1974) ("no payment . . . for damages because of hindrance or delay"); *Western Engineers, Inc. v. State Road Comm'n*, 20 Utah 2d 294, 437 P.2d 216, 217 (1968) (no damages for "any delay or hindrances").

Nonetheless, we do not believe that the trial judge's error requires a reversal of the ultimate decision in this case. Green was still allowed to go to trial on its first theory of liability, intentional interference with contract. After reviewing the record, we are confident that Green did not remove from its case any of its damage claims because of the trial judge's erroneous ruling on the negligence count. Instead, it is apparent that Green simply attempted to prove that all of Turner's wrongful acts were done intentionally rather than negligently. Our conclusion in this matter is supported by Green's trial allegations that Turner was responsible for the entire 98,-000 hours worked by Green employees in excess of the 76,000 originally budgeted.

Moreover, we agree with the trial judge that a verdict should have been directed against Green because it failed in its proof as to the damages caused by Turner. For example, one Green witness testified that neither he, nor anyone else, could determine how much of the extra work Green performed on the project was caused by change orders (for which Green *was* reimbursed by the City) and how much was caused by the interferences of Turner. Furthermore, Green's damage witness, John Roose did not provide any evidence as to how he arrived at his estimates for the increase in total hours worked on the project caused by each of Turner's alleged wrongful acts. For example, Roose estimated that Turner's failure to ensure the provision of temporary heat caused a twenty-five percent overrun in manpower on the project. However, he offered no testimony about the kinds of work affected by the lack of temporary heat or the amount of time the job would have required had temporary heat been provided. The same criticism extends to the other sixteen alleged causes of delay. Turner's failure to prevent the masonry contractor from bricking in the utility shafts before Green finished installing the plumbing allegedly caused a fifteen percent increase in manpower expended. Yet there are no figures provided for how much time installation of the plumbing in the shafts would have taken absent the premature masonry work. And

---

3. One example of an alleged hindrance will suffice. The mechanical and electrical systems on each floor of the hospital were connected to each other through numerous vertical shafts running from the top to the bottom of the building. The masonry contractor was allowed to brick in many of these shafts before the plumbing work was completed. As a result, Green's plumbers were required to finish the job dangling from rope ladders suspended from the top. This required a much greater expenditure of manpower than originally planned although it did not necessarily delay Green's completion of the work.

so forth. It appears that Roose simply took the total figure for increased hours spent on the project and divided it into seventeen rather arbitrary categories.[4]

We recognize that "the law does not require impossibilities" when it comes to proof of damages, but it does require whatever "degree of certainty tha[t] the nature of the case admits." *Schankin v. Buskirk,* 354 Mich. 490, 497, 93 N.W.2d 293 (1958). A damage award must not be based on "mere speculation, guess, or conjecture." *Zirin Laboratories Int'l v. Mead-Johnson & Co.,* 208 F.Supp. 633 (E.D.Mich.1962). In this case, Green certainly had it within its power to provide the court with an accounting for the number of extra hours caused by change orders for which it was paid. Green also should have been able to provide a breakdown by job activity for the number of hours that would have been required in the absence of malfeasance by Turner in the performance of its construction management duties. Because of its failure to do these things, there was "no basis for allocation of the lump sum [claimed] between those causes which were actionable and those which were not," making "it proper to reject the entire claim." *Lichter v. Mellon-Stuart Co.,* 305 F.2d at 220.

Accordingly, the decision of the district court is affirmed.

---

4. Roose's original estimates for Green's damages was based on a manpower overrun of 125%. However, on cross-exam, it became apparent that the increase in manpower cost over the bid estimate was actually 128%. Undaunted, Roose proceeded to add two percentage points to lack of temporary heat and a third to another category.